PJM, INC., and Phil Mentesana, Appellants,

v.

WALTER CLARK ADVERTISING, INC., Appellee.

No. 20711.

Court of Appeals of Texas, Dallas.

Oct. 14, 1981.

Rehearing Denied Nov. 6, 1981.

John M. Gillis, Dallas, for appellants.

Linda S. Aland, Strother, Davis & Hill, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

TED Z. ROBERTSON, Justice.

This is an appeal from a judgment awarding Appellee, Walter Clark Advertising, Inc., its debt and interest on a sworn account, together with attorney's fees. Appellants, PJM, Inc. and Phil Mentesana, contend that since appellee's interest charge was in excess of twice the amount allowed by law, the court erred in failing to hold that appellee should forfeit all debt and interest. Further, appellants contend the trial court erred in admitting certain evidence in violation of the parol evidence rule. Finally appellant Mentasana contends the trial court erred in imputing the corporate liability of appellant PJM to him. We hold appellee is excused from the statutory penalties for double usury because he established that the violation resulted from bona fide error. Furthermore, we hold the error, if any, in the admission of the document appellant characterizes as parol evidence, is not reversible error. We reverse that part of the judgment holding appellant Mentesana personally liable for appellant PJM's

debt to appellee, however, because there was no evidence of facts upon which such action was based.

On May 22, 1978, appellee and appellant PJM entered into a written agreement whereby Clark agreed to perform advertising services. The agreement provided that delinquent accounts for advertising services would "bear an interest rate of *ten percent* (10%) per annum on the amount of the unpaid balance from the *sixtieth* day after the invoice has been billed. . . ." [Emphasis added.] Commencing with the first invoice sent on June 12, 1978, and continuing with respect to all other invoices, there appeared at the bottom of the printed form of the invoice the words, "Terms, 1½ percent interest per month on unpaid balance over 30 days old." The first billing sent which actually included a service charge, dated October 2, 1978, reflected three past due invoices totaling $8,317.98, and an interest charge of $254.02, which was calculated at 1½ percent per month on the unpaid balance over *30* days old. A second billing for the same past-due invoices totaling $8,317.98, was sent on November 13, 1978, showing the interest, calculated from 30 days past due at 1½ percent per month for items 30 days past due, had grown to $369.77.

Upon appellant PJM's refusal to pay the two billings, appellee sued for the unpaid invoices with interest at only ten percent (10%), in accordance with the parties written agreement. Appellants PJM and Mentesana counter claimed urging that appellee had "charged", in its two billings, more than double the lawful interest rate, and seeking a forfeiture of all debt and interest, plus attorney's fees. At trial appellee admitted that the billings had charged more than the agreed amount, but offered evidence, believed by the court, that the excess interest was result of bona fide error. The trial court rendered judgment in favor of appellee against appellants PJM and Mentesana, jointly and severally, for the debt, 10% interest and attorney's fees, and denied relief to appellants PJM and Mentesana on their counter claim.

Appellants contend that since the evidence showed that appellee "charged" more than double the interest allowed by law, and since under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2) (Vernon 1970) the defense of bona fide error is not available, appellee's principal and interest must be forfeited and they must be allowed to recover their attorney's fees. We do not agree. Article 5069–1.06(1) and (2) provide:

(1) Any person who contracts for, *charges* or receives interest which is greater than the amount authorized by the Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there *shall be no penalty for a violation which results from an accidental and bona fide error.*

(2) Any person who contracts for, *charges* or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit *as an additional penalty,* all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder. [Emphasis added.]

In construing Article 5069–1.06, our supreme court has held that: "By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that only one such condition need occur to trigger penalties: either a contract for, a charge of, or receipt of usurious interest." *Windhorst v. Adcock Pipe and Supply,* 547 S.W.2d 260, 261 (Tex.1977). Appellee *charged* interest in the two billings sent to PJM, Inc., beginning 30 days after invoice instead of 60 days after invoice as the parties contracted. Interest charged at any rate for a period contracted by the parties to be free of interest is not

only usurious, but is "in excess of double the amount of interest allowed" because any interest at all is more than double *zero* interest. *See Houston Sash and Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 221 (Tex. 1979). Additionally, the interest charged by appellee in the respective billings, for the period of time and at the rate employed, was also more than double the interest that would have been earned had Clark calculated the interest only for the period of time and only at the rate provided by the parties' contract. Since Clark's interest charges, by either calculation, were more than double the interest allowed, the penalties provided by both subsection 1 and subsection 2 of Article 5069–1.06 must be applied and enforced, unless they are excused. See *Johns v. Jaeb*, 518 S.W.2d 857 (Tex.Civ.App.—Dallas 1974, no writ). *Johns* explains that:

Subdivision (1) of this statute imposes a penalty of twice the amount of the interest contracted for, plus a reasonable attorney's fee. Subdivision (2) adds forfeiture of the principal as well if the interest contracted for is more than double the amount of interest allowed by law. Both penalties apply here, since the amount of interest contracted for is well in excess of twice the amount allowed by law.

■ The only statutory excuse to avoid the penalty imposed by Article 5069–1.06 lies in a showing that the violation resulted "from an accidental and bona fide error". Clark met this burden to the trial court's satisfaction by showing that a billing clerk, ignorant in fact of the parties' special contract, merely calculated and billed interest to PJM based upon the printed recital of the billing form itself.

■ Appellants contend, however, that the statutory excuse of "accidental and bona fide error" does not apply when the usurious charge violates both the first and second paragraphs of Article 5069–1.06. We do not agree. We construe both paragraphs together, and hold that since appellee is excused by "bona fide error" from the penalty imposed by the first paragraph of the statute, there can be no "additional penalty" imposed by the second paragraph

of the statute. The use of the words "additional penalty" in paragraph two, evidences a legislative intent that, in the absence of a penalty under paragraph one, the *additional* penalty of paragraph two is likewise excused because there is no *initial* penalty to which an additional penalty may be added.

■ In construing a statute, a court may consider, among other matters, the following:

(1) the object sought to be attained;

(2) the legislative history and;

(3) the consequences of a particular construction.

Tex.Rev.Civ.Stat.Ann. art. 5429b–2 § 3.03 (Vernon Supp.1980). The "Declaration of Legislative Intent" included in the law in question provides that the object of the legislature in enacting the statute was to provide firm and effective penalties for usury. The specific intent of the legislature was "to protect the citizens of Texas from *abusive* and *deceptive* practices now being perpetrated by unscrupulous operators, lenders, and vendors in both cash and credit consumer transactions. . . ." This legislative declaration does not show an intent to impose the severe penalties of Art. 5069–1.06(2) upon those, such as appellee, that violate the statute due to accidental or bona fide error. There is no suggestion in the record before us that appellee is unscrupulous or that the interest charges here in question were abusive or deceptive.

■ Our construction of Art. 5069–1.-06, based upon the legislature's expressly declared intent, is consistent with the traditional rule for construing statutes of the kind here involved. As indicated by the discussion of the legislative intent, *supra*, Article 5069–1.06 is both remedial and penal. In the context of this case, however, appellants seek to enforce the penal provisions of the statute and, therefore, we must consider the statute as penal for the purpose of construing it. *Board of Ins. Com'rs. v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803 (1951). In Texas, a penal statute must be strictly construed against imposing the penalty. *Agey v.*

*American Liberty Pipe Line Co.*, 141 Tex. 379, 172 S.W.2d 972 (1943). The supreme court has applied the rule of strictly construing penal statutes to the specific statute here in question, Article 5069–1.06. *See Houston Sash and Door Co., Inc. v. Heaner, supra*, at 222. The Austin Court of Civil Appeals, in considering another penal provision of the same code with which we are here concerned, Art. 5069–7.02 of the Consumer Credit Code, stated that "any doubt as to the intention of the Legislature [*sic*] to punish the conduct of the party should be resolved in favor of the defendant". *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490, 491 (Tex.Civ.App.—Austin 1977, writ ref'd n.r. e.). We agree with the Austin court's statement and adopt a construction of Art. 5069–1.06 which gives appellee the benefit of the legislative doubt against imposing the penalties imposed by the statute.

We recognize that our holding is in conflict with the El Paso Court of Civil Appeals in *Tyra v. Bob Carroll Construction Co.*, 618 S.W.2d 853 (Tex.Civ.App.—El Paso 1981) that " 'accidental and bona fide error' is no defense to the penalty imposed by Article 5069–1.06(2) where interest charges are in excess of double the amount of interest allowed by law, .... " The El Paso court cited no authority in support of this statement and did not explain its reasoning.

■ Appellants next argue the trial court erred in considering a document entitled "Grand Opening Budget—June/July, 1978", and in granting judgment based upon that document, because it violated the parol evidence rule. Assuming the document appellant's complain of violates the parole evidence rule, we must presume the trial judge, as the finder of fact, did not consider it as evidence. *Simpson v. Vineyard*, 324 S.W.2d 276 (Tex.Civ.App.—El Paso 1959, no writ). In the present case, it affirmatively appears from the record that, in granting appellee a judgment for $8,317.98, the trial court considered the numerous invoices bearing that amount rather than considering the document complained of which bears an amount of $8,328. The error, if any, in admitting the document

complained of was not such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

■ Appellant Mentesana finally contends that there was either no evidence or insufficient evidence of facts which support the trial court's judgment holding him personally liable for appellant PJM's debt to appellee. Generally, in order to disregard the corporate fiction and hold an officer, director, or shareholder personally liable for the obligations of the corporation, the court must find that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, or avoid the effect of a statute. *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955). Likewise, we have held on a prior occasion that "courts will not disregard a corporate entity unless it is employed to defraud existing creditors of the shareholder, to evade an existing obligation, to circumvent a statute to achieve or perpetuate a monopoly or to protect crimes." *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712, 718 (Tex.Civ.App.—Dallas 1977), writ ref'd n.r.e.).

■ We have examined the evidence in the present case and have found no evidence of facts which justify disregarding the corporate fiction. Appellee contends, however, that appellant PJM's right to do business in this state was forfeited because it failed to pay its franchise taxes and, therefore appellant Mentesana became personally liable for appellant PJM's debts under V.A.T.S. Tax.—Gen. art. 12.14 (Vernon Supp.1980–81). There is no evidence that appellant PJM's franchise taxes were not paid. Likewise, there is no evidence that appellant PJM forfeited its right to do business in this state. Accordingly, the trial court erred in disregarding the corporate fiction and in holding appellant Mentesana personally liable for appellant PJM's debt to appellee.

The judgment is affirmed in all respects as to appellant PJM. The judgment against appellant Mentesana is reversed

and judgment is here rendered that appellee take nothing from appellant Mentesana.

Affirmed in part; reversed and rendered in part.