Albert L. BENDELE, Appellant,

v.

TRI–COUNTY FARMER'S CO–OP, Appellee.

No. 16627.

Court of Appeals of Texas, San Antonio.

June 29, 1982.

John Britt, Britt, Combest & Fuini, San Antonio, for appellant.

Robert Smith, Bruce Waitz, San Antonio, for appellee.

Before CADENA, C. J., and KLINGEMAN and ESQUIVEL, JJ.

## OPINION

## ON APPELLANT'S AND APPELLEE'S MOTIONS FOR REHEARING

ESQUIVEL, Justice.

We withdraw the opinion filed November 25, 1981 and substitute the following opinion.

This is a usury case. Appellee Tri-County Farmer's Co-op (hereafter Co-op), a farmer's agricultural cooperative, filed suit on sworn account against appellant, Albert L. Bendele (hereafter Bendele). Bendele counterclaimed against Co-op in order to recover the statutory penalties for usury under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) and (2) (Vernon 1971).[1] In his answer, Bendele argued that he specifically was entitled to (1) forfeiture of twice the amount of interest contracted for, charged, or received, plus reasonable attorney's fees pursuant to art. 5069–1.06(1) and (2) the forfeiture of all principal due and owing Co-op pursuant to art. 5069–1.06(2).

Co-op responded by alleging that an agreement existed where Bendele would pay a service charge of one and one-half percent per month on any past due account. Co-op alleged that the agreement was evidenced by (1) a printed notation on the bottom of the invoices or (2) an oral agreement between the parties that the service charge was a finance charge or penalty for late payment which could be avoided by paying the amount due on time. Co-op argued that the oral agreement included a stipulation that the service charge was not an interest charge. Alternatively, Co-op argued that if the trial court held that the service charge was an interest charge, then the charge was not an assessment double the amount of interest authorized by law pursuant to Tex.Rev.Civ.Stat.Ann. arts. 5069–1.03 and 1.04 (Vernon 1967).[2] Co-op also emphasized that if the interest rate exceeded double the allowable limits, then the doctrine of de minimus non curat lex[3] would apply and the penalty of forfeiture of all principal, Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2) (Vernon 1971), should not be invoked.

The testimony at the trial showed that Bendele began making credit purchases of

---

1. Article 5069–1.06(1) and (2) provided at the time this suit arose:

 (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

 (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

2. Article 5069–1.03 provides:

 When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

 Article 5069–1.04 provides:

 The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle.

3. According to Black's Law Dictionary 482 (4th ed. revised 1968), de minimis non curat lex means, "the law does not concern itself about trifles."

agricultural supplies from Co-op in 1974.[4] It is undisputed that during the 1974–78 period, Co-op added periodic charges to Bendele's account which exceeded the maximum legal rate of interest, even if it were assumed that the applicable rate of interest during the entire period was ten percent (10%).[5] When purchases were made by appellee Bendele, invoices were prepared by the Co-op. Co-op maintained that the invoices in question were either signed by Bendele or those which were not signed were the result of "accident, mistake and/or bona fide error." Co-op stressed that this constituted an agreement in writing regarding interest payments and therefore, Co-op did not charge Bendele double the amount of interest allowed by law, double ten percent (10%) per annum pursuant to Tex.Rev.Civ.Stat.Ann. art. 5069–1.04 (Vernon 1967), and that therefore the additional penalty provision of Article 5069–1.-06(2), did not apply.

The issues before the trial court were (1) whether the charges were interest and (2) if so, whether the legal rate of interest was six percent (6%) as per art. 5069–1.03 or ten percent (10%) as per art. 5069–1.04. In simpler terms, the lower court had to determine whether suit was predicated upon an open account or a sworn account; whether a written contract existed between Bendele and Co-op to pay an agreed and stipulated rate of interest; whether there was an agreement to pay a specified rate of interest; and whether there were any charges computed and assessed against Bendele in excess of double the amount of interest, twenty percent (20%) per annum, which were the result of bona fide error. Pursuant to Tex.R.Civ.P. 296, the trial court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. That the Defendant and Counter Claimant, ALBERT L. BENDELE, JR. (hereinafter called Defendant), purchased goods, wares and merchandise from Plaintiff and Counter Defendant, TRI-COUNTY FARMER'S CO–OP (hereinafter called Plaintiff), of the reasonable value of SEVEN THOUSAND THREE HUNDRED EIGHT AND 02/100 DOLLARS ($7,308.02).

2. That the Defendant contracted to pay to Plaintiff the various amounts of such purchases, as set out on Plaintiff's invoices to the Defendant.

3. That the Defendant signed Plaintiff's invoices for such purchases, each bearing the statement

All accounts due and payable the 10th day of month following month of purchase. All accounts will carry a FINANCE CHARGE of 1½% per month, which is an ANNUAL RATE of 18%.

4. That the Plaintiff mailed monthly statements to Defendant bearing the statement

All accounts due and payable the 10th day of month following month of purchase. All accounts will carry a FINANCE CHARGE of 1½% per month, which is an ANNUAL RATE of 18%.

---

4. It is undisputed that the first invoice signed and received by Bendele, dated February 28, 1974, as well as the other invoices introduced by Co-op into evidence dated in 1974, did *not* contain the following language: "All accounts due and payable the 10th day of the month following month of purchase. All accounts will carry a FINANCE CHARGE of 1½% per month which is an ANNUAL RATE of 18%." However, it is also uncontroverted that the language stated above was included on the monthly statements which reflected the status of Bendele's account with Co-op. It is undisputed that the monthly statements which included this language were received by Bendele without objection.

5. We note parenthetically that Co-op, in its Fourth Supplemental Petition, stated:

VI.

Plaintiff admits that it made a finance charge in excess of TEN PERCENT (10%) per annum for a portion of the period involved, but says that it did not charge interest or interest in excess of double the amount authorized by law. Plaintiff further says that in the four instances where the finance charge on Defendant's debt was compounded, the same was not pursuant to the usual, ordinary and customary course of Plaintiff's business or procedure, but on the contrary was the result of bona fide error.

which monthly statements Defendant received and many of which he paid and to which he lodged no objection upon receipt.

5. That the Defendant verbally agreed with Plaintiff's manager to pay a finance charge of 1½% per month on past due purchases.

6. That Plaintiff made written demand on Defendant for payment of its debt in the amount of NINE THOUSAND SEVENTY–SEVEN AND 65/100 DOLLARS ($9,077.65) more than thirty (30) days before suit.

7. That such demand exceeded the amount actually due Plaintiff.

8. That the attorneys' fees prayed for by Plaintiff in the amount of TWO THOUSAND SIX HUNDRED SIXTY–TWO AND 78/100 DOLLARS ($2,662.78) were reasonable and necessary.

9. That twice the amount of interest contracted for within four (4) years prior to the date of the filing of Defendant's Counter Claim amounts to SEVEN THOUSAND ONE HUNDRED FIFTY AND NO/100 DOLLARS ($7,150.00).

10. That to the extent that Plaintiff charged or collected finance charges in excess of 20% per annum, same were the result of accident or mistake.

11. That any finance charges made or collected by Plaintiff in excess of 20% per annum were minimal in amount.

### CONCLUSIONS OF LAW

1. That Plaintiff is entitled to recover its debt in the amount of SEVEN THOUSAND THREE HUNDRED EIGHT AND 02/100 DOLLARS ($7,308.02) from the Defendant.[6]

2. That Plaintiff, having made an excessive demand on the Defendant, is not entitled to recover its attorneys' fees.

3. That the Defendant contracted with Plaintiff to pay a finance charge equal to 18% per annum on all past due purchases.

4. That such finance charges were interest.

5. That such finance charges were in excess of 10% per annum and hence usurious.

6. That such contractual finance charges were not in excess of double the amount authorized by law.

7. That the Defendant is entitled to recover a penalty equal to twice the amount of interest contracted for, i.e., SEVEN THOUSAND ONE HUNDRED FIFTY AND NO/100 DOLLARS ($7,150.00).

8. That the Defendant is entitled to recover attorneys' fees in the amount of FOUR THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($4,750.00).

9. That to the extent that Plaintiff charged or collected interest in excess of 20% per annum, Defendant is not entitled to recover a penalty because of accident or mistake.

10. That to the extent that Plaintiff charged or collected interest in excess of 20% per annum, Defendant is not entitled to recover a penalty because of bona fide error.

11. That to the extent that Plaintiff charged or collected interest in excess of 20% per annum, Defendant is not entitled to recover a penalty because the doctrine of de minimis non curat lex.

Therefore, judgment was rendered in favor of Bendele for $7,150.00, which was an amount equal to twice the interest contracted for. Judgment also was rendered in favor of the Co-op for $7,308.06 for the amount due on past charges, of which Bendele's attorneys fees, in the amount of $4,750.00, were to be set off. Consequently, Bendele received a net judgment of $4,591.94. Bendele appeals.

The thrust of Bendele's seventeen points of error is that he is entitled to recover the penalty for usury pursuant to art. 5069–1.-

---

**6.** Conclusion of law one incorrectly recites that Co-op is entitled to $7,308.02. The judgment stipulates that Co-op was entitled to $7,308.06.

06(2). We do not have before us any issue questioning Bendele's entitlement to the penalty for usury pursuant to art. 5069–1.-06(1). Thus Bendele's appeal is predicated upon the trial court's judgment awarding Co-op $7,308.06, the principal balance due and owing Co-op on Bendele's account. The encompassing issue, which must be addressed in piece-meal fashion by this Court, is whether Bendele is entitled to the penalty of art. 5069–1.06(2).

In his first point of error, Bendele states that the trial court erroneously excluded evidence of Co-op's credit policy on the basis of the appellee's attorney-client privilege. According to Bendele, the evidence, which was sealed as Defendant's Exhibit No. 31 and included letters to third parties from Co-op's attorney, would show that the usurious charges assessed against the appellant were not the result of accident, mistake or bona fide error. Bendele argues that the attorney-client privilege was waived by Co-op when Co-op voluntarily made material available for inspection to Bendele's attorney.

Co-op contends that it merely complied with a court order from the presiding judge requiring the production of the documents for inspection, and it did not voluntarily produce the items or produce them strictly pursuant to Bendele's subpoena duces tecum. Co-op stresses that no determination of the attorney-client privilege as to these documents was held until the trial on the merits. Consequently, Co-op urges that the exclusion of Defendant's Exhibit No. 31 from the trial must be deemed conclusive, since the trial court judge determined first the applicability of the privilege.

Bendele on the other hand emphasizes that Co-op never filed a motion to quash the subpoena duces tecum, never filed a protective order alleging the attorney-client privilege and did not object to the evidence in question *until* the trial on the merits. ▪ Thus the precise question raised in Bendele's first point of error is whether a party waives his attorney-client privilege when he complies without objection to a pre-trial court order requiring the produc-

tion of privileged matter. We disagree with the trial court and hold that the attorney-client privilege was waived.

The original order, requiring the inspection of documents, states in pertinent part:

It is further ordered that documents subpoenaed by ALBERT L. BENDELE, JR. under a Subpoena Duces Tecum issued to TRI–COUNTY FARMER'S CO–OP be produced for inspection by the Attorney for ALBERT L. BENDELE, JR. on May 21, 1980, at the Law Offices of Bruce Waitz in San Antonio, Bexar County, Texas.

The order did not compel the Co-op's *attorney* to produce privileged documents himself; the order required *Co-op* to produce the documents for inspection purposes.

It is well-settled that the privileged nature of communications between the attorney and client may be waived by the client. *Dobbins v. Gardner*, 377 S.W.2d 665, 668 (Tex.Civ.App.—Houston 1964, writ ref'd n.r. e.); McCormick, 1 Texas Law of Evidence § 429, 430 (3rd ed. 1980).

It is clear that Co-op waived the attorney-client privilege when it voluntarily made the material available for inspection by, and even gave copies of two of the letters to Bendele's attorney. The voluntary production of the letters and other material included in Defendant's Exhibit No. 31 operated to waive the attorney-client privilege. Co-op's failure to assert the privilege when the items were produced for inspection waived the privilege. *See Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc.*, 621 S.W.2d 200, 204 (Tex.Civ.App.—Texarkana 1981, no writ), and *Hurley v. McMillan*, 268 S.W.2d 229, 233 (Tex.Civ.App.—Galveston 1954, writ ref'd n. r. e.). Therefore, the trial court erred in excluding the exhibit from evidence.

In his points of error two through eight, Bendele maintains that the trial court erred in finding that the applicable legal rate of interest in the transactions between appellant and Co-op was ten percent (10%) per annum, pursuant to art. 5069–1.04. In par-

ticular, Bendele presents challenges to the evidence by raising legal and factual insufficiency points of error: that there was "no evidence," "insufficient evidence" or it was "against the great weight and preponderance of the evidence" that the parties entered into a written contract where they agreed to a specified rate of interest.

■ When both legal and factual insufficiency evidence points are raised, we should rule upon the legal insufficiency point first. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361, 369 (1960).

■ Where legal insufficiency points of error are raised, such as "no evidence" or "as a matter of law," we are charged with reviewing the evidence which tends to support the findings of fact. We also must give effect to all reasonable inferences that may be drawn properly from the findings, and we must disregard all contrary or conflicting evidence. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex. 1980); *Butler v. Hanson*, 455 S.W.2d 942, 944 (Tex.1970); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); O'Connor, *Evidence Points on Appeal*, 37 Tex.B.J. 839 (1974); Calvert, *supra*.

The first issue raised by Bendele in points of error two through eight is whether there was any evidence of a contract in writing between the parties to pay an agreed and specified rate of interest. More particularly, can signed invoices containing stipulations as to interest evidence a written agreement in a usury case?

The evidence showed that subsequent to December 13, 1975, Bendele signed Co-op's invoices for the purchase of goods, wares and merchandise, each bearing the statement:

All amounts due and payable the 10th day of the month following month of purchase. All accounts will carry a *FINANCE CHARGE* of *1½%* per month, which is an ANNUAL RATE of 18%.[7]

Bendele stresses that the lower court erred as a matter of law in holding that the invoices constituted a contract or agreement to pay interest. In support of his argument, Bendele cites *Heaner v. Houston Sash and Door Co., Inc.*, 560 S.W.2d 525 (Tex.Civ.App.—Waco 1977), affirmed in part, reversed in part, 577 S.W.2d 217 (Tex. 1979), and *Watson v. Cargill, Inc., Nutrena Division*, 573 S.W.2d 35 (Tex.Civ.App.— Waco 1978, writ ref'd n. r. e.), for the proposition that interest payment provisions on invoices do not constitute *proof* of an agreement to pay interest. Both *Houston Sash* and *Watson* do not stand for the proposition that invoices do not constitute proof of an agreement to pay interest; rather, those cases require the pleading and proof on sufficient evidence that such a written contract exists. *Cf. Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises*, 615 S.W.2d 258 (Tex.Civ.App.—Dallas 1981), aff'd, 625 S.W.2d 295, 300 (Tex.1981) [where the supreme court noted that the issue of whether an agreement existed to pay the interest contained in the invoices was never presented in *Houston Sash* ].

■ Co-op responds to Bendele's erroneous contentions in *Houston Sash* and *Watson* by arguing that signed invoices containing stipulations as to interest can evidence a written agreement to pay interest. Co-op cites *Berry v. Pierce Petroleum Corp.*, 120

---

7. Co-op stresses that the monthly statements it mailed to Bendele contained the identical language as the invoices:

All amounts due and payable the 10th day of the month following month of purchase. All accounts will carry a FINANCE CHARGE of *1½%* per month which is an ANNUAL RATE of 18%.

It is evident that the interest proviso had been included on the monthly statements from the beginning. It is also clear that Bendele received those statements and, many of which, he paid without objection. Nevertheless, the unilateral inclusion of an interest provision on a monthly statement is not necessarily evidence of a written agreement or contract created by a course of conduct to pay interest. *See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises*, 615 S.W.2d 258 (Tex.Civ. App.—Dallas, 1981), aff'd, 625 S.W.2d 295, 299 (Tex.1981).

Tex. 452, 456, 39 S.W.2d 824, 825 (1931), and numerous other venue cases in support of this proposition. Co-op maintains that if an invoice, signed by the purchaser or an unsigned invoice acquiesced in by him can be a written contract in a venue case, then it also should be a written contract under usury law. We hold that signed invoices containing stipulations as to interest can evidence a written contract in a usury case under art. 5069–1.04. *Dean Vivian Homes v. Sebera's Plumbing and Appliance, Inc.*, 615 S.W.2d 921 (Tex.Civ.App.—Waco 1981, no writ). *Cf. Houston Sash and Door Co., Inc., supra* [where the Texas Supreme Court held that invoices were not plead and proved sufficiently as being evidence of a written contract]; and *Watson v. Cargill, Inc., Nutrena Division, supra* [where there was no evidence that the debtor agreed to pay a specified rate of interest].

We are not alone in extending the rule regarding signed invoices constituting proof of a written contract for usury purposes. In the recent case of *Dean Vivian Homes*, the Waco Court dealt directly with the issue of signed invoices constituting a written contract:

> In summary, there is evidence that an invoice containing the stipulation for interest charged by plaintiff on the account was a part of every transaction between the parties for the sale and purchase of goods and services. Defendant signed several of the invoices, paid interest charged to the account on the basis of the invoice provision, and later agreed orally

to interest based upon the stipulation in the invoices. These circumstances support the determination that the stipulation formed a contract in writing by the parties for the interest to be charged on the account. *See Berry v. Pierce Petroleum Corp.*, 120 Tex. 452, 39 S.W.2d 824, 825 (1931); *Hawkins v. Frick-Reid Supply Corporation*, 154 F.2d 88 (5th Cir. 1946); *Pierce Oil Corporation v. Gilmer Oil Co.*, 230 S.W. 1116, 1117 (Tex.Civ.App.—Amarillo 1921, writ dism.); *Ferguson v. Martin*, 70 Tex.Jur.2d 138, Contracts § 519.

615 S.W.2d at 925–26.[8]

To our knowledge, this was the first time a Texas appellate court held that a signed invoice containing an interest provision may constitute a contract in writing for other than venue purposes. Although the authority cited in *Dean Vivian Homes* does not directly support this rule, we believe the court was correct. Thus we overrule Bendele's point of error involving the legal insufficiency of the evidence that invoices containing stipulations as to interest cannot evidence a written contract.

The second issue raised by Bendele in points of error two through eight is whether there was any evidence to support the finding that Bendele verbally agreed with Co-op's manager to pay a finance charge on past due purchases. A corollary question is whether there was any evidence to support the trial court's conclusion that a contract to pay interest did exist between the parties.

---

**8.** The invoices in *Dean Vivian Homes* contained the following proviso in bold capital type balanced across the bottom of the invoices immediately above a line provided for the "Buyer's" signature:

"THE FINANCE CHARGE, WHICH WILL BE GREATER OF (A) A MINIMUM CHARGE OF 50¢ OR (B) AN AMOUNT DETERMINED BY APPLYING A PERIODIC RATE OF 1.5% PER MONTH TO THE FIRST $500.00 OF PREVIOUS BALANCE OR PART THEREOF AND AN AMOUNT DETERMINED BY APPLYING A PERIODIC RATE OF 1.0% PER MONTH TO ANY PART OF THE PREVIOUS BALANCE IN EXCESS OF $500.00. IF THE FINANCE CHARGE EXCEEDS 50¢, THE ANNUAL PERCENTAGE RATE WILL BE 18% ON THE FIRST $500.00 OF PREVIOUS BALANCE AND

12% ON THAT PART OF THE PREVIOUS BALANCE IN EXCESS OF $500.00.
"NOTICE TO BUYER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS MAY OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.
"BUYER ACKNOWLEDGES THAT THIS CONTRACT WAS COMPLETELY FILLED IN PRIOR TO ITS EXECUTION AND THAT HE RECEIVED A TRUE COPY THEREOF."

In finding of fact five and conclusions of law three and four, the trial court held that a contract to pay interest did exist as evidenced by the verbal agreement between Bendele and the Co-op's manager, W. A. Roberson.

■ In reviewing the legal sufficiency of the evidence, the only evidence which relates to this finding and these conclusions is the testimony of Roberson. Roberson, the general manager of Co-op, made conflicting statements regarding the assessment of interest on Bendele's account. While it is evident that Roberson, even up to the time of trial, did not know how and when to assess interest charges under the agreement, that fact does not negate the actual existence of an agreement. Thus, there was some evidence in the record upon which the trial court could have concluded that a contract to pay interest did exist between the parties.

The third issue raised by Bendele in points of error two through eight is whether there was factually insufficient evidence to support the implicit finding that the parties entered into a written contract wherein Bendele and Co-op agreed to and stipulated for a rate of interest.

■ Where factual insufficiency points of error are raised, such as "insufficient evidence" or "great weight," we are charged with examining all the evidence, including any evidence contrary to the findings of fact filed by the trial court. If the evidence supporting the findings of fact is so weak or the evidence to the contrary is so overwhelming that the findings should be set aside, then a new trial should be ordered; however, if the evidence does support the findings, then we must affirm the judgment. See In Re King's Estate, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); O'Connor, supra; and Calvert, supra.

■ The evidence clearly militates against the finding that, during 1974, Bendele had agreed and stipulated in writing to a specified rate of interest.

■ During the cross-examination of Roberson, Bendele introduced the Co-op's credit policy, which was enacted by the Board of Directors on November 9, 1971:

DEAR PATRON:

PLEASE READ: The following statement as it pretains [sic] to a change in our CREDIT POLICY.

Effective with this statement our credit policy will be as follows:

"All charge accounts are due and payable by the 10th DAY of the month following the month of purchase. Accounts which remain un-paid on the 24th DAY of the month, following the month of purchase, will be assessed a service charge of 1½% INTEREST. (THIS IS AN ANNUAL RATE OF 18%)"

By making this change you will be assured of at least 30 days credit on any purchase you make.

ACCOUNTS WITH ANY PART OF IT BEING 60 DAYS OR OLDER WILL BE PLACED ON A C.O.D. NOTICE.

TRI–COUNTY FARMER'S CO–OP.
DEVINE, TEXAS

Bendele also introduced a copy of the usual credit agreement Co-op members signed:

CREDIT AGREEMENT WITH THE TRI COUNTY FARMERS CO–OP

I, THE UNDERSIGNED, AGREE TO THE FOLLOWING AGREEMENT BETWEEN THE CO–OP AND MYSELF.

The open account that I have with Tri-County Farmers Co-op is a thirty day account and is due on the tenth of each month following the charges. PAYABLE AT THE TRI–COUNTY FARMERS CO–OP, DEVINE, MEDINA COUNTY, TEXAS.

THE MONTHLY STATEMENT WILL RUN FROM THE TWENTIETH (20) TO THE TWENTIETH OF EACH MONTH. (Any charges after the twentieth (20) will not appear on your statement until the following month.)

THE TRI COUNTY FARMERS CO–OP HAS THE RIGHT TO STOP CHARGES (place the account on cash only) AT ANY

TIME THE ACCOUNT IS NOT PAID AS THIS AGREEMENT STATES OR THE CUSTOMER HAS AGREED TO BEFORE THE CHARGES ARE MADE. I AGREE THAT THE TRI COUNTY FARMERS CO–OP CAN CHARGE MY ACCOUNT ONE AND A HALF PER-CENT INTEREST (1½%) ON THE UN-PAID BALANCE PER MONTH. THIS IS DUE AND PAYABLE AT THE TRI COUNTY FARMERS CO–OP, DEVINE, MEDINA COUNTY, TEXAS.

_____

_____

_____

The record reflects that Bendele never signed the credit agreement. Co-op, during the course of the trial, argued that this contract was lost or that the failure to have the contract signed by Bendele was bona fide error. While the statutes permit bona fide error to mitigate the penalty provisions of art. 5069–1.06, bona fide error cannot create or establish evidence of a written agreement to charge a specified rate of interest sufficiently to avoid the consequences of art. 5069–1.03 and 5069–1.06(2).

Significantly, the only possible evidence of a written agreement existing between the parties, which relates to a rate of interest, are the signed invoices. As we noted *supra*, the three invoices which were introduced into evidence by Co-op, covering the period February 28, 1974 through March 21, 1974, did not contain *any* finance charge, service charge or interest charge proviso. These invoices evidence the fact that *no*

written agreement existed between the parties concerning the payment of a rate of interest, at least during February and March, 1974. Clearly, finding of fact three is not supported by the evidence. Thus, before we can reach a conclusion to the third issue of points of error two through eight, we must answer the fourth issue.[9]

Issue four is whether the record is factually insufficient to support finding of fact five that a contract to pay interest did exist as evidenced by the verbal agreement between Bendele and the Co-op's manager, W. A. Roberson.

■ In reviewing the factual sufficiency of the evidence, we have carefully considered the testimony of both Roberson and Bendele which relates to finding of fact five. We conclude that the evidence is factually sufficient to support the finding.

Bendele testified that he "never did talk about no agreements" regarding an oral agreement with Roberson concerning the payment of interest, a finance charge or service charge. Roberson stated that he informed Bendele that "we charged one and a half percent service charge over thirty days" on past due purchases. The trial court could have concluded that Bendele verbally agreed to the payment of 1½% interest on a thirty day account for a total of 18% per annum on past due purchases. Moreover, it is well settled that the trier of fact is the sole arbiter of a witness' credibility. *Moser v. McLemore*, 266 S.W.2d 253, 255–56 (Tex.Civ.App.—Amarillo 1953, no writ). Therefore, Bendele's points of error

**9.** If we hold that Bendele and Co-op did not reach a verbal agreement with regard to a rate of interest, then we must conclude that the trial court should have divided its conclusions of law three into two parts. First, those invoices that contained the finance charge proviso should require the application of art. 5069–1.04. Second, those invoices that did not contain a finance charge proviso should require the application of art. 5069–1.03.

Art. 5069–1.03 provides that when parties to a written contract ascertaining a sum certain do not agree to a specified rate of interest, by law, interest is assessed at the maximum rate

of six percent per annum. It is undisputed that Co-op, at the very least, assessed eighteen percent per annum to Bendele's account. Consequently, Co-op's assessment of interest was more than double the interest allowable under law under the second situation. If we find that finding of fact five was supported by factually sufficient evidence, then we do not need to reach the implicit finding that the parties entered into a written contract specifying a rate of interest. *See Preston Farm & Ranch Supply v. Bio-Zyme Enterprises*, 615 S.W.2d 258 (Tex. Civ.App.—Dallas 1981), aff'd, 625 S.W.2d 295, 300 (Tex.1981).

two through eight involving the factual insufficiency of the evidence are overruled.

█ In points of error nine through fourteen, Bendele raises several issues regarding the trial court's findings of fact 10 and 11, and conclusions of law 9 and 10. First, Bendele notes that distinct discrepancies exist between the findings of fact and conclusions of law signed by the trial judge on July 7, 1980, and the judgment signed on June 5, 1980.[10] Thus, the first issue raised in these points of error is whether the findings of fact and conclusions of law control over discrepancies with the final judgment. The rule is well settled that the findings of fact, filed subsequent to judgment, are controlling if any conflict exists with the recitations of the judgment. *Law v. Law*, 517 S.W.2d 379, 383 (Tex.Civ.App.—Austin 1974, writ dism'd); *See Hood v. Adams*, 334 S.W.2d 206, 209 (Tex.Civ.App.—Amarillo 1960, no writ).

Second, points of error nine through fourteen raise the issue of whether bona fide error is a defense to the penalty of art. 5069–1.06(2) where the creditor has charged in excess of twenty percent per annum. We have found only two cases discussing this issue, *Tyra v. Bob Carroll Construction Co.*, 618 S.W.2d 853, 855 (Tex.Civ.App.—El Paso 1981, writ granted) and *P. J. M., Inc. v. Walter Clark Advertising, Inc.*, 624 S.W.2d 282, 285–86 (Tex.App.—Dallas 1981, writ ref'd n. r. e.).

█ In *Tyra*, the El Paso Court of Civil Appeals stated, in dicta, that "accidental and bona fide error is no defense to the penalty of art. 5069–1.06(2) where interest charges are in excess of double the amount

of interest allowed by law ...." 618 S.W.2d at 855. In *P. J. M.*, the Dallas Court of Appeals cogently articulated that both sections of art. 5069–1.06 must be construed together. We agree with the Dallas Court in holding that "in the absence of a penalty under paragraph one the *additional* penalty of paragraph two is likewise excused because there is no *initial* penalty to which an additional penalty may be added." 624 S.W.2d at 285.

█ In the present case, the trial court implicitly held by its conclusion of law seven that no "accidental *and* bona fide error" existed to mitigate the penalty of art. 5069–1.06(1).[11] Consequently, the recitations in the findings of fact ten and eleven and conclusions of law nine and ten regarding the excusing of the penalty of art. 5069–1.06(2) were erroneous. Obviously, if the defense of accident and bona fide error did not exist when the imposition or collection of the usurious interest occurred, then accidental and bona fide error could not magically mitigate the penalty of art. 5069–1.06(2). Therefore, we hold that accidental and bona fide error is not a defense to the application of the penalty of art. 5069–1.06(2) if accidental and bona fide error did not exist as a defense to the penalty of art. 5069–1.06(1).

The third issue raised by these points of error is whether, as a matter of law, the doctrine of *de minimis non curat lex* is not applicable to assessments charged in excess of double the legal rate. Bendele argues that the trial court improperly applied the *de minimis* doctrine in this case because the

10. In the judgment signed June 5, 1980, the Court found that:
in the event the charges of interest on the account of ALBERT L. BENDELE, JR. were in excess of double the amount of interest allowed by Article 5069-1.04 then such charges in excess of double the legal rate were the result of *accident* by TRI–COUNTY FARMER'S CO-OP. [emphasis added.]
In finding of fact ten the court found that to the extent that Co-op charged or collected finance charges in excess of twenty percent per annum, those charges were the result of *acci-*

*dent or mistake.* In conclusion of law nine, the court noted that to the extent Co-op charged or collected interest in excess of twenty percent per annum, Bendele is not entitled to recover a penalty because of *accident or mistake.* Similarly, in conclusion of law ten, the court excused Co-op from the provisions of art. 5069–1.06(2) because of *bona fide error.*

11. We note that the trial court's finding of mistake is no defense to the penalties of art. 5069–1.06.

doctrine was applied to small sums in excess of double the legal rate. Bendele asserts that the issue of whether an amount is insignificant or small should be determined by a comparison of the amount of interest actually charged, demanded or received to the maximum legal rate, *not* by comparison to *double* the maximum legal rate.

Bendele provides an example of his argument. Assuming that a $1,000.00 credit transaction occurred under art. 5069–1.04 for a one year period, the maximum allowable interest would be ten percent or $100.00. If during the year, the creditor charged interest amounting to $201.00, Bendele argues that the sum which should be considered in determining whether the *de minimis* doctrine applies is $101.00 and not the $1.00 in excess of double the interest allowed by arts. 5069–1.01 *et seq.*

Bendele cites *Peightal v. Cotton States Bldg. Co.*, 25 Tex.Civ.App. 390, 61 S.W. 428 (San Antonio 1901, no writ) as support for his proposition that the *de minimis* doctrine should not apply in those cases where interest exceeded more than double the legal rate. The San Antonio Court of Civil Appeals noted that:

"The contention of appellant's that the taking by appellee as interest of $4.20, instead of $4.16 ⅔ per month, ipso facto shows usury cannot be maintained. Where the amount of interest taken above *the legal rate* is trivial, the maxim, 'de minimis non curat lex' is applicable. The taking of an insignificant amount would have a tendency to disprove rather than prove usury; for any one intending to take more profit upon a loan of money than law would hardly be content with an exceeding small amount." Webb, Usury § 210. Besides, it is apparent that this insignificant amount in excess was paid simply for the convenience of both parties, with the intention of deducting such

excess from the last payment. [emphasis added.]

61 S.W. at 432.

 We agree with Bendele. We hold that the *de minimis* doctrine only applies in those cases where small or insignificant amounts exceed the *legal rate* of interest allowable by law. *Peightal v. Cotton States Bldg. Co.*, 61 S.W.2d at 428. *See also Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151, 153 (Tex.Civ.App.—Beaumont 1976, no writ); and *Miller v. Gibralter Savings and Building Assn.*, 132 S.W.2d 606, 607 (Tex.Civ.App.—Beaumont 1939, writ dism'd judgmt cor.). In this case, however, the *de minimis* doctrine was applied to an amount in excess of *double the legal* limit. The trial court erred in holding that Bendele is not entitled to recover the penalty of art. 5069–1.06(2) because of the *de minimis* doctrine.[12]

 Therefore, we affirm the judgment of the trial court awarding Bendele $7,150.00, pursuant to the penalty provision of art. 5069–1.06(1), which was an amount equal to twice the amount of interest contracted for.

 Pursuant to art. 5069–1.06(2), Bendele is entitled to the forfeiture of *all* principal, paid and unpaid or due. Thus, we reverse the judgment of the trial court awarding Co-op the amount of principal due, $7,308.06 and render judgment and award to Bendele the penalty for forfeiture of principal due in the same amount, $7,308.06. Similarly, Bendele is entitled to the forfeiture of principal paid. From a careful review of all of the exhibits admitted during the trial, including the invoices and the monthly statements, and after taking into account the four year statute of limitations applied by the trial judge in this case, we render judgment in favor of Bendele for the amount of principal he actually paid, $10,613.96. Accordingly, we render judgment in favor of Bendele in the

12. It is implicit in the trial court's findings of fact ten and eleven and conclusions of law nine, ten and eleven that Co-op actually charged or collected interest in excess of 20% per annum, which was more than double the amount of interest allowed by art. 5069–1.04. We therefore concluded the sanction art. 5069–1.06(2) applies.

amount of $25,072.02, at nine percent per annum interest from the date of judgment.

The trial court, having denied Bendele's request for relief under art. 5069–1.06(2), could not have considered all factors in determining appellant's attorneys fees. Therefore, we reverse and remand the trial court's judgment on the issue of reasonable attorneys fees.[13]

Consequently, this cause is remanded back to the trial court for further proceedings consistent with this opinion.

13. Bendele is obviously entitled to reasonable attorneys fees in the amount of $4,750.00 in the very least. Thus, the trial court must determine what amount of attorneys fees is reasonable under the entire circumstances.