The CECO CORPORATION, Appellant,

v.

STEVES SASH & DOOR COMPANY, INC., Appellee.

No. 04-85-00072-CV.

Court of Appeals of Texas, San Antonio.

May 28, 1986.

Rehearing Denied July 31, 1986.

Leonard Gittinger, Jr., San Antonio, for appellant.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellee.

Before CADENA, C.J., and REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

Steves Sash & Door Co., Inc., sued the Ceco Corporation on a sworn account of $16,451.45, representing the balance due on the purchase price of over 1600 wooden doors. The doors were purchased by Ceco for installation in the Hyatt Regency Hotel which was then under construction in San Antonio. The total purchase price of the doors was $71,702.95. Ceco denied the account under oath, alleged that the doors were defective, and filed a counterclaim alleging usury, breach of contract and violation of the Deceptive Trade Practices Act. The case was tried to a jury. Based upon the jury's answers to special issues, the trial court entered judgment for Steves on the account, and for attorney's fees, post-judgment interest and court costs. A take nothing judgment was entered on Ceco's counterclaims.

Ceco raises 17 points of error in its appeal from this judgment. Upon review of these points we have determined that the trial court committed reversible error as raised in Ceco's second point. That point complains that the trial court erred in failing to find Steves guilty of charging usurious interest and in failing to render judgment for Ceco on its counterclaim in that regard.

Ceco's argument is that the trial court should have found Steves charged usurious interest for two reasons: there was no agreement to pay interest as Steves alleged, and, even if such an agreement did exist, Steves charged interest for a period of time during which it agreed that no interest would be charged. We sustain point of error two based on the second argument. For purpose of the discussion of this point we will assume that the parties agreed to an interest payment in accordance with the conditions of sale printed on the back of Steves' shipping orders that were sent in response to Ceco's order. As will be explained, the result would be the same if there was no agreement to pay interest.

 Steves' shipping orders set out its terms and conditions of sale. Payment was due 30 days from the invoice date and a service charge would be imposed "at the highest lawful rate for each month or fraction thereof past due." A service charge in the amount of $245.69 appears on Steves' invoice number 731, dated October 23, 1981. Ceco did not pay this charge. The service charge was described on that invoice as:

2% prime per annum,[1] on past due invoice *from date of invoice* to Sept. 30, 1981 as follows: Inv. # 10086, Aug. 31, 1981, $13,454.70. [Emphasis added]

Thus, while Steves' shipping orders provided for an interest charge on invoices that were not paid within 30 days from the date of the invoice, it charged interest on invoice number 10086 from the date of that invoice, August 31, 1981, through September 30, 1981. The charging of interest for any time period that is supposed to be free of interest is not only usurious, but is in excess of double the amount of interest allowed because any interest at all is in excess of double zero interest. *Houston Sash & Door, Inc. v. Heaner,* 577 S.W.2d 217, 221 (Tex.1979); *Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29, 34 (Tex. App.—Corpus Christi 1984), *aff'd as modified,* 690 S.W.2d 239 (Tex.1985); *PJM, Inc. v. Walter Clark Advertising, Inc.,* 624 S.W.2d 282, 284–85 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). Steves admitted that it charged the $245.69 service charge and demanded payment of that amount from Ceco. It is apparent that a usurious charge appears as a matter of law on the face of the documents, and the trial court erred in entering a take nothing judgment on Ceco's counterclaim for usury.

Steves argues that if we find the trial court committed reversible error in rejecting the usury claim, that part of the case should be remanded in the interest of justice since Steves did not receive fair notice of Ceco's complaint. Steves contends it was prepared only to meet an allegation of usury based on the alleged absence of any agreement to pay a late charge and, had it known of the complaint concerning the charge during the interest-free period, it would have raised the defense of bona fide error. We do not agree that Steves failed to receive fair notice.

When there are no special exceptions, a petition will be construed liberally in favor of the pleader. ... Also, '[t]he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated.' ... A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. [Citations omitted].

*Roark v. Allen,* 633 S.W.2d 804, 809–810 (Tex.1982).

Ceco's First Amended Original Counterclaim upon which it went to trial makes specific reference to invoice number 731. It states that that invoice reflects an interest charge from August 31, 1981, to September 30, 1981, that the invoice is usurious on its face, and that the interest charged on the invoice is in excess of twice the amount allowed by law. Steves was thus confronted by a pleading alleging an article 5069–1.06(2)[2] cause of action in reference to invoice number 731. We do not think it fatal that Ceco did not specifically plead that August 31 through September 30 was a contractual interest-free period. Steves took the position that it was undisputed that the rate charged did not exceed the 24% per annum rate allowed by law. Ceco alleged that the interest charged in reference to the specific time period was greater than twice the amount allowed by law. This allegation should have alerted Steves that Ceco was complaining of more than a simple excessive rate charge or lack of an agreement to pay interest. At any rate, if Steves considered the pleading obscure, it should have specially excepted to it. *Roark,* 633 S.W.2d at 810. It has waived any defect by its failure to do so.

---

**1.** Steves' treasurer testified that "2% prime per annum" amounted to an interest rate of 22% per annum.

**2.** All statutory references are to TEX.REV.CIV. STAT.ANN. art. 5069 (Vernon 1971 and Vernon

Supp.1986) unless otherwise noted. Article 5069–1.06(2) imposes penalties when the usurious interest charged is in excess of twice the amount allowed by article 5069.

TEX.R.CIV.P 90 and 91. It has further waived the affirmative defense of bona fide error by its failure to plead and offer proof of that defense. *Cochran v. American Savings & Loan Association of Houston*, 586 S.W.2d 849, 850 (Tex.1979).

We also reject Steves' contention that the doctrine of *de minimus non curat lex* should apply. That doctrine only applies when small or insignificant amounts exceed the legal rate of interest, not to amounts in excess of double the legal limit. *Bendele v. Tri-County Farmer's Co-op*, 635 S.W.2d 459, 470 (Tex.App.—San Antonio), *aff'd in part, vacated and rendered in part*, 641 S.W.2d 208 (Tex.1982). Steves cites us to *Yates Ford, Inc. v. Ramirez*, 692 S.W.2d 51 (Tex.1985), but we remain unpersuaded by that authority. The overcharges declared to be *de minimus* in that opinion ranged from $.11 to $3.10. The overcharges in the authorities cited in *Yates Ford* ranged from $.42 to $7.56. There is no comparison between these overcharges and the amount of $245.69 charged in this case.

Since the charge in this case was more than double the rate allowed by law (i.e., more than twice zero), the penalties provided by both subsections 1 and 2 of article 5069–1.06 must be applied. *PJM, Inc.*, 624 S.W.2d at 285. Article 5069–1.06(1) provides a penalty of three times the interest charged, but not less than $2,000.00 or 20% of the principal, whichever sum is smaller. Since three times $245.69 is less than $2,000.00, but 20% of the principal is greater than $2,000.00, the penalty to be imposed under this section is $2,000.00. Article 5069–1.06(2) applies when the amount of interest contracted for, charged or received is in excess of double the amount of interest allowed by article 5069. The penalty imposed by subsection 2 is the forfeiture of all principal, interest and all other charges, plus the recovery of reasonable attorney's fees. Under this subsection Steves must forfeit $55,251.50, representing principal paid by Ceco ($71,702.95 total principal less $16,451.45 unpaid principal). *Tri-County Farmer's Co-op v. Bendele*, 641 S.W.2d 208, 210 (Tex.1982); *Johns v. Jaeb*, 518 S.W.2d 857, 861 (Tex.Civ.App.—Dallas 1974, no writ).

We would reach the identical result in this case if there had been no agreement to pay interest. With no agreement to pay interest, the 6% rate of article 5069–1.03 would apply to overdue amounts. That article does not permit the 6% rate to be charged until the 30th day after the sum owed becomes due and payable. Since the invoice upon which the interest was charged was not due and payable until September 30, 1981, the charge was made by Steves during the statutory interest free period. Thus, whether or not Ceco has agreed to an interest payment, the charge on invoice number 731 is not only usurious, but is in excess of twice the amount allowed by law. *Heaner*, 577 S.W.2d at 221.

Ceco also argues that the trial court erred in submitting Special Issue 1 in which the jury refused to find that Steves agreed to accept a charge-back for repairs. Ceco further contends that the court erred in failing to disregard the jury's answer to that issue. Review of these points requires a discussion of the formation of the contract between the parties and an examination of its terms.

A charge-back occurs when the buyer or recipient of the goods undertakes to remedy a problem or expends money to remedy a problem (rather than calling on the seller to do so) and withholds the expense of the repairs from the amount owing on the purchase price.

The first contract document to change hands was Steves' order confirmation dated May 18, 1981. The order confirmation consists of a letter referencing Ceco's purchase order number 19–1030–04 which Steves had obtained by phone, copies of its shipping orders numbered 7949 through 7990, and a consolidation sheet containing a summary of the information contained on the shipping orders.

Each shipping order contains the notation, "This is our understanding of your

PURCHASE ORDER. Please advise immediately of any discrepancy. Otherwise all items will be produced, shipped and priced as listed." The back of the shipping order sets out the "terms" and "conditions" of sale. The shipping order specifically states:

Orders are accepted subject to the express understanding that no "charge-backs" may be imposed for repairs or purchases of other materials or any other circumstance.

Ceco then sent Steves its purchase order number 19–1030–04 dated June 1, 1981. "Purchase order conditions" are set out on the back of this order. The conditions provided in part:

If this Purchase Order is not in confirmation of a prior agreement, but rather has been sent to Supplier as Ceco's original offer for the purpose of forming a contract for the purchase of goods described herein, then Ceco hereby objects to the inclusion of any additional or different terms proposed by Supplier in his acceptance of this purchase order and if they are included in Supplier's acceptance a contract for sale will result upon Ceco's terms as stated herein.

Supplier's acceptance of this Purchase Order or Supplier's shipment of the goods ordered herein shall constitute Supplier's acceptance of all terms and conditions of this Purchase Order.

There is no reference in the purchase order to a charge-back. Since the purchase order was Ceco's confirmation of the prior agreement, it contained no objection to additional terms proposed by Steves. Under TEX. BUS. & COM. CODE ANN. § 2.207(b) (Vernon 1968) the "no charge-back" term would become part of the contract. Comment 6 to section 2.207 supports this holding. It provides in part:

If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to.... [U]nder this section a failure to respond permits addition-

al terms to become part of the agreement.

In addition to the agreement that no charge-back would be permitted, there is much testimony in the record that Ceco was told by Steves that a charge-back was unacceptable. The jury correctly found that Steves' version of the agreement was the agreement of the parties.

■ Ceco argues that the court erred in failing to disregard the jury's answer to Special Issue 8 in which the jury refused to find Steves' representations about the quality of its doors resulted in damage. We do not agree. The jury found that Steves represented the doors would have characteristics, ingredients, uses or benefits which they did not have, that the doors would be of a particular standard, quality or grade, which they were not, and that such representations were a producing cause of damage to Ceco. The jury found, however, that no sum of money would compensate Ceco for such damages. The latter answer is consistent both with Steves' interpretation that the contract did not allow a charge-back for repairs, and that, while the doors were initially defective, Steves' repair work cured the defects. There was sufficient evidence to support both these views and the jury was entitled to believe Steves' version.

■ Ceco also complains of the failure to submit its requested issues which raise a distinction between representations made by Steves both before and after discovery of the defects. In light of the submission of the broad issues embracing representations both before and after discovery of the defects, an additional submission of Ceco's requested narrow issues would result in an improper double submission of the same fact. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 255 (Tex.1974).

Ceco further complains that the court erred in refusing to submit its requested issues regarding express warranty. Steves argues that the trial court was correct in refusing their submission because the damages question in the cluster of issues does

not submit a correct measure of damages. The damages question of the proposed express warranty issues asks, "What sum of money, if any, if paid now in cash, would fairly and reasonable [sic] compensate THE CECO CORPORATION for defects, if any, in the doors?" The question is improper for two reasons. First, it asks what sum would compensate Ceco for the defects in the doors rather than for the breach of warranty.

Second, the question does not guide the jury to the correct method of damage computation. Ceco pleaded that the breach of the express warranty, along with the other "unlawful acts and practices" pleaded were producing causes of damages to Ceco. Included specifically in the damages was $9,952.75 withheld by the general contractor as a charge-back to Ceco for the contractor's repair work to the doors. The only discernible measure of damages pleaded by Ceco due to the breach of warranty was the cost of repairing the doors. The damages issue as written, however, provides no guide to the correct measure of damages. The trial court should instruct the jury definitely as to a correct measure or rule of damages applicable to the issues and facts presented. *South-Plains Ready-Mix v. McDermett*, 278 S.W.2d 575, 576 (Tex.Civ.App.—Amarillo 1954, no writ). *See also* TEX.R.CIV.P. 277. The proper measure of damages is a question of law for the court, and the court's charge should limit the jury's consideration to facts that are properly a part of the damages allowable. *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 862 (Tex.App. —Amarillo 1983, no writ); *Sawyer v. Fitts*, 630 S.W.2d 872, 875 (Tex.App.—Fort Worth 1982, no writ). It was not error to refuse to submit the express warranty issues. If one of a cluster of tendered issues is not in substantially correct language, the trial court does not err in refusing to submit the entire cluster. *Shwiff v. Priest*, 650 S.W.2d 894, 901 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

In addition to the usury point of error, we have discussed Ceco's points of error relating to the Deceptive Trade Practices Act, TEX.BUS. & COM. CODE ANN. § 17.41 *et seq.* (Vernon Supp. 1986), since positive findings under those points might have provided the potential for recovery in addition to that under the usury statute. The same is not true of Ceco's remaining points and we find it unnecessary to discuss them.

The judgment of the trial court is reversed and judgment is here rendered in favor of Ceco for $57,251.50, the amount of principal actually paid plus the $2,000.00 usury penalty. The debt sued upon is cancelled. Ceco shall recover its reasonable attorney's fees in the amounts found by the jury: $17,000.00 for trial of the suit and $15,000.00 for the appeal to this court. In addition, Ceco shall recover attorney's fees of $5,000.00 if application for writ of error is made to the Supreme Court and $2,250.00 if writ of error is granted.

Ceco prayed for pre-judgment interest in its counterclaim, and it renews that prayer in its brief. Pre-judgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite time prior to judgment. *Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (Tex.1980); *Howze v. Surety Corp. of America*, 584 S.W.2d 263, 268 (Tex.1979). The usurious interest was charged on invoice number 731 on October 23, 1981. At that time the penalty provisions of article 5069–1.06(1) and (2) were activated, and the sum of $57,251.50 became due. Consequently, we also render judgment for Ceco for pre-judgment interest at the rate of 6% on that amount from October 23, 1981 to November 6, 1984, the date of final judgment. In addition, judgment is rendered for Ceco for post-judgment interest in the amount of 10.32%, Office of Consumer Credit Commissioner, 9 Tex.Reg. 5558 (1984), and for costs of court.