ROYLEX, INC., Appellant,

v.

LANGSON BROS. CONSTRUCTION CO., INC., Don K. Langson, Richard K. Langson, Bruce K. Langson and Fidelity and Deposit Company of Maryland, Appellees.

No. 17328.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 17, 1979.

Rehearing Denied July 12, 1979.

George M. Bishop, Houston, for appellant.

Bailey & Black, David B. Black, Fulbright & Jaworski, William L. Maynard, Houston, for appellees.

PEDEN, Justice.

Roylex, Inc. (Roylex) appeals from a judgment denying recovery against individual defendants and awarding Roylex a recovery of $10,764.26 against only Langson Brothers Construction Co., Inc. (Langson, Inc.) plus attorney's fees. Roylex alleges that the trial court erred in failing to award prejudgment and post-judgment interest, in failing to find that Langson, Inc. was the alter ego of the three Langson brothers, and in entering summary judgment in favor of Fidelity and Deposit Company. On crosspoint, the appellees assert that Roylex's cause of action was barred by limitations. We amend to provide prejudgment interest and affirm.

On June 21, 1973, Langson, Inc. and Roylex entered into a construction contract on a project known as Pool & Patio Townhomes (Townhomes). Roylex was to supply the material and labor necessary to lay concrete for a street, Boardwalk Lane, curb and lane markers and curb inlets, the preparation for the street, and the hauling away of dirt. On August 20, 1973, the parties entered into a second contract for flat concrete work on the Garden Homes project, and they had entered into an oral contract on August 8, 1973, for concrete work on the Townhomes.

Mr. Royce Teel, president of Roylex, explained that while there were only two written contracts and two projects, there were the three "jobs" mentioned above. The only job not paid for is the construction of Boardwalk Lane under the June 21 contract, and by amendments filed as the trial began, Roylex sued on that contract alone, admitting that payment had been received on the other agreements theretofore sued upon.

Mr. Teel testified that each time concrete was poured, the yardage was measured and a draw or bill was sent by Roylex. Mrs. Teel, the bookkeeper for Roylex, stated that on September 21, 1973, the date of completion, $18,030.61 was owed to Roylex on the Townhomes project and $164.20 on the Garden Homes project. When Roylex received a check for Garden Homes in the amount of $7,266.35 in October, Mrs. Teel credited $164.20 of it to the Garden Homes project and the remainder to Townhomes. When asked why she had credited to Townhomes more than seven thousand dollars from a check that was marked for Garden Homes, she replied:

> Well, I had to put it somewhere. Well, I—because it said—it said Garden Homes, but they—so I credited the rest of it to the other job, because that's the only place to put it.

The only testimony offered by the Langsons was a small portion from a deposition.

Roylex's first two points of error complain of the trial court's failure to award prejudgment and post-judgment interest on its recovery. Roylex contends that since this is a suit on a written contract, it is entitled to the statutory prejudgment interest rate of 6% as provided by Article 5069–1.03, Vernon's Texas Civil Statutes. The Langsons point out that because of the confused state of Roylex's pleadings, Langson did not know until the time of trial which contract was being sued upon or what amount Roylex was claiming.

It is the general rule in Texas that prejudgment interest cannot be allowed *eo nomine* (under that name) unless provided for by contract or statute. There are instances, however, where the courts have not been consistent or rigid in applying the rule in a manner that would deny a party legal compensation for the use or detention of his money. *Phillips Petroleum Co. v. Stahl Petroleum*, 569 S.W.2d 480 (Tex.1978).

"Interest" is defined as "the compensation allowed by law for the use of forebearance or detention of money." Article 5069–1.01(a) Vernon's Tex.Civ.Stat. (1971). Where a written contract is silent as to rate of interest the law provides that "interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable." Article 5069–1.03 (1971).

▪ In our case, the contract in question called for payment of $29,500. It provided that Roylex would submit a payment schedule to Langson, Inc. for its approval. Ten percent of the total contract price was to be deducted before the calculation of any progress payments, with the 10% to be due and payable 45 days after completion of the contract. In addition, the contract provided that payment was to be made as follows: 30% when steel was installed, 60% when concrete was installed and 10% upon completion. The payment procedure outlined in this contract is one that is commonly employed. At any given stage of the contract not only the project's progress but also the obligor's payment liabilities can be readily ascertained. Clearly, Langson, Inc. was furnished the means of ascertaining with reasonable certainty the extent of its liability. It is true that there was some confusion as to whether the payments were credited to the correct accounts, but the only questionable bookkeeping entry did not adversely affect Langson, Inc.

The Texas Supreme Court has twice ruled since entry of judgment in our case that prejudgment interest may be awarded under Art. 5069–1.03 if a plaintiff proves a written contract ascertaining a sum payable on a date certain. *Phillips Petroleum Co. v. Stahl Petroleum Co., supra; Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (1978).

We sustain the appellant's first point.

▪ As to the lack of a specific award in the judgment of 9% post-judgment interest, "[a]ll judgments of the courts of this State shall bear interest at the rate of nine per-

cent per annum from and after the date of the judgment." Article 5069–1.05 Tex.Rev. Civ.Stat.Ann. (Supp.1975). The award of $10,764.26 plus attorney's fee bears interest at the rate of 9% even though the judgment is silent as to post-judgment interest. *See Broadway Drug Store of Galveston, Inc. v. Trowbridge*, 435 S.W.2d 268 (Tex.Civ.App. 1968, no writ).

Points of error 3, 4, 7, 8, and 9 concern the theory of alter ego. Roylex maintains that Don K. Langson, Bruce K. Langson, and Richard K. Langson treated Langson, Inc. as their alter ego and that the trial court erred in refusing to submit a special issue and an instruction on alter ego. The court expressly stated in the judgment that "[n]o evidence exists nor was any presented which would support plaintiff's assertion of an alter ego ground of recovery against the LANGSON BROTHERS, Individually or in their partnership capacity."

▪ "Courts will not disregard the corporation fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 351 (1955). Generally, the corporate form will be disregarded (1) where it is used as a means for perpetrating fraud; (2) where the corporation is organized and operated as the mere tool or business conduit of another corporation; (3) where resort is made to the corporate fiction in order to avoid an existing legal obligation; (4) where the corporate form is used to achieve or perpetuate monopoly; (5) where the corporate structure is used as a vehicle for circumventing a statute; or (6) where the fiction is invoked in order to protect crime or justify wrong. *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 837 (Tex.Civ.App.1966, writ ref. n. r. e.); *Pacific American Gasoline Co. of Texas v. Miller*, 76 S.W.2d 833 (Tex.Civ.App.1934, writ ref.). "Whether or not a shareholder will be insulated from personal liability

should depend on the use or misuse which that shareholder is making of the corporate form. The only shareholders who should be held personally liable are those who have used the corporation to bring about results which are condemned by the general statements of public policy which are enunciated by the courts as 'rules' which determine whether the courts will recognize their own child." *Sutton v. Reagan & Gee, supra.*

■ Texas courts emphasize failure to follow corporate formalities in deciding whether to impose shareholder liability. Those acts or misuses which may cause a court to "pierce the corporate veil" include the commencement of business without the issuance of shares, a lack of shareholder meetings or directors' meetings or of the signing of consents, the making of decisions by shareholders as if they were partners, failure to distinguish between corporate property and personal property, use of corporate funds to pay personal expenses without proper accounting, or failure to maintain complete corporate and financial records. There seems to be little reason to punish errant shareholders unless their actions are directed toward defrauding another party. Hamilton, Business Organizations, 19 Texas Practice 233, § 234.

We hold that the evidence in our case does not raise the issue of alter ego. The only evidence offered showed that Langson, Inc. followed standard corporate procedures and policies; shares were issued; minutes were kept and meetings were held. Each brother contributed $50,000 to the capital of the corporation. There was evidence that the brothers incorporated so that the business would be eligible for larger loans. At least one of the brothers loaned money to the corporation, but it was not shown whether it was repaid. The appellant points out that it "has never sought to ground its claim of alter ego on fraud as such but on the fact that the corporation was used . . . to avoid personal liability for the Langson brothers and as a vehicle for which they could have their personally owned projects paid for while attempting to avoid responsibilities for the costs incurred in improving their personally owned holdings."

■ We hold that the evidence showed, rather that the payments made by the Langsons and their corporation were applied between the three contracts at the discretion of the bookkeeper for Roylex. There was no evidence of corporate misuse or of failure to follow corporate formalities, no evidence of fraud or bad faith, and no evidence to support the submission of an issue and instruction on alter ego. *See Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550 (Tex.Civ.App.1961, writ ref. n. r. e.).

The appellant raises points of error asserting that the trial court erred in failing to render judgment against Don and Richard Langson 5) because they entered into a bond in which they agreed to be liable for double the amount of the plaintiff's lien on the property in question plus interest, costs and attorney's fees, and 6) based on their being principals on the bond. At trial, Roylex's current pleading was amended further, and when the trial judge was considering exceptions to the bond allegations, counsel for Roylex represented to the court that those allegations were a part of its alter ego allegations. The trial judge then sustained the defendants' special exception, ruling that any allegations in the second paragraph of § VI of the plaintiff's petition could be considered only in connection with the alter ego allegations. The bond was not admitted in evidence and no issue concerning its effect on the alter ego allegations was raised in the trial court. We overrule the appellant's points 5 and 6.

Points of error 10–12 concern the forfeiture of the Langson, Inc. corporate charter because of non-payment of taxes. Roylex asserts that the trial court erred in refusing to allow Teel to testify as to the state of Langson's charter, in refusing to admit into evidence a certificate from the Secretary of State showing when the corporate charter had been forfeited, and in refusing to allow Roylex to call Langson's attorney to the witness stand.

The certificate from the Secretary of State was offered in a bill of exception. It shows that the charter of Langson, Inc. was not forfeited until March 15, 1976. The contract which Roylex is suing on was entered into almost three years earlier, on June 21, 1973, and the work done under it had long since been completed before the charter was forfeited. A forfeiture at that time did not make the shareholders or officers personally liable on the contract. The trial court did not err in excluding the evidence concerning forfeiture of the charter.

Roylex asserts in its final point of error that the trial court erred in entering summary judgment for Fidelity and Deposit Company of Maryland. (Fidelity). On January 7, 1974, Roylex filed a $5,513.64 lien on certain real property of Langson, Inc., Don K. Langson and Richard Langson for materials and labor Roylex had furnished pursuant to a construction contract. On April 25, 1974, Fidelity, as surety, delivered to Roylex a bond pursuant to the provisions of Article 5472c, V.T.C.S. Fidelity was not joined as a party to this suit until July 30, 1976, two years after the bond was executed, served and recorded. Fidelity moved for summary judgment alleging that the action was barred as a matter of law by the one year statute of limitations provision of Art. 5472c § 4. Rule 31 of the Texas Rules of Civil Procedure provides that "[n]o surety shall be sued unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in cases otherwise provided for in the law and these rules." Roylex asserts that since Langson, Inc. was in Chapter XI bankruptcy proceedings, a suit against Fidelity was therefore stayed and the statute of limitations tolled from the time the Langson, Inc. bankruptcy action was filed on November 11, 1974, until September 17, 1976, the date the stay order was lifted. However, Art. 1987, V.T.C.S., provides that a surety may be sued without joining the principal obligor if the principal obligor is actually or notoriously insolvent. Non-joinder of the principal is permitted if an adequate excuse is alleged. *Zimmerman v.*

*Bond*, 392 S.W.2d 149 (Tex.Civ.App.1965, no writ.). We overrule this point.

By cross-point, Langson, Inc., alleges that Roylex's cause of action was barred by the statute of limitations and that the court erred in overruling its motion for judgment notwithstanding the verdict and entering judgment against it. The problem was complicated by Roylex's having amended its pleadings substantially on three occasions.

Its original petition, filed January 2, 1974, alleged that Langson, Inc., had failed to pay for work completed on the Pool and Patio Townhomes project. This work "included preparation and construction of walks, patios, pools decks, turn-down curbs, stand-up curbs, drives, approaches, brick wall footings and steps, as well as other concrete work on the Defendant's project." Roylex's first amended petition, filed July 30, 1976, recited the same allegations. The second amended petition, filed January 25, 1978, asserts in addition to the allegation found in the previous petitions, "that the Defendant LANGSON BROS. CONSTRUCTION CO., INC. entered into a construction contract with the Plaintiff on or about June 21, 1973, to lay concrete for Boardwalk Lane." At trial, Roylex's third amended petition was further amended and the issue narrowed to non-payment on the Boardwalk contract.

Article 5539b, V.T.C.S., provides:

Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterpclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may post-

pone or continue the case as justice may require.

To ascertain whether Roylex's claim is barred by the statute of limitations, we must determine whether or not the claim in Roylex's third amended petition is wholly based upon and grows out of a new, distinct or different transaction and occurrence. *City of Houston v. Magness*, 364 S.W.2d 702 (Tex.Civ.App.1963, writ ref.). The original petition makes reference to the Pool and Patio Townhomes project. The contract sued on states that the building of Boardwalk Lane is for the Pool and Patio Townhomes project. It appears to us that the cause of action is not "wholly based upon . . . a new, distinct or different . . . occurrence." The trial court correctly ruled that the cause of action was not barred.

The judgment of the trial court is amended to provide that the plaintiff shall recover from Langson Bros. Construction Co., Inc., prejudgment interest at the rate of 6% per annum from November 5, 1973, (45 days after completion of the contract) to the date of judgment, June 7, 1978. The judgment need not be amended to recite the award of post-judgment interest since it is provided by law. As amended, the judgment is affirmed.

COLEMAN, C. J., and WALLACE, J., also sitting.