PRESTON FARM & RANCH SUPPLY, INC. and Ken Vanderhoof, Appellants,

v.

BIO-ZYME ENTERPRISES, Appellee.

No. 20469.

Court of Civil Appeals of Texas, Dallas.

March 10, 1981.

Rehearing Denied April 8, 1981.

David M. Stagner, Nance, Caston & Nall, Denison, for appellants.

Gloria A. Jackson, Ron Berkowitz, The Fiedler Firm, Richardson, for appellee.

Before CARVER, STOREY and STEPHENS, JJ.

CARVER, Judge.

Preston Farm & Ranch Supply, Inc. and Ken Vanderhoof appeal from a judgment rendered in favor of Bio-Zyme Enterprises in a suit on a sworn account. We affirm on the grounds (1) that under Section 2.207 of the Texas Business and Commerce Code a seller's additional terms included in monthly statements imposing a service charge become a part of the contract of the parties unless the buyer objects within a reasonable time; (2) that since the service charge rate printed on monthly statements to Vanderhoof was greater than, but not double, the then highest lawful rate, Bio-Zyme was properly penalized twice the interest contracted for, charged, or received; (3) that

since the service charge printed on monthly statements to Preston Farm was less than the highest lawful rate for corporations, usury was not shown; and (4) that the trial court correctly denied joint and several judgment against an individual and a corporation in the absence of pleading or proof that the corporation was used by the individual to work a fraud or injustice.

The following facts appear in the record. In 1975 Bio-Zyme was a manufacturer offering a line of stock feed and Ken Vanderhoof was a retailer of stock feed and other goods. These two merchants commenced an open account relationship with a verbal order from Vanderhoof for cow-calf feed for a total of $1,745.00. Bio-Zyme sent Vanderhoof its invoice No. 9252 dated April 28, 1975, with the shipment, and this invoice recites "Terms: Chg." Bio-Zyme's subsequent monthly statement to Vanderhoof at the end of April 1975 reflected this single transaction. The monthly statement consisted of a printed form showing, from top to bottom: (1) Bio-Zyme's full name, address, telephone numbers, its president, and its principal products; (2) an open block for the customer's name and address; (3) printed columns entitled, "Date, Invoice No., Charge, Credit and Balance"; and (4) a printed legend beneath all columns reciting:

> No finance or carrying charge is made on accounts paid within 30 days of purchase. Accounts not paid within 30 days will on our billing date (the 26th day of each month) be charged 1% each month which is 12% annual rate.

### THANK YOU

Between April 28, 1975, and October 15, 1975, there were eight sales from Bio-Zyme to Vanderhoof, and seven monthly statements, each reflecting the same service charge legend. The account of Vanderhoof by the end of October 1975 reflected that service charges were imposed four times for a total of $227.63, and the account balance stood at $14,910.16. In October 1975, Vanderhoof informed Bio-Zyme that he was incorporating his business and that future orders were to be billed to Preston Farm &

Ranch Supply Co. The first order of Preston Farm was shipped November 9, 1975, accompanied by the same printed invoice as had been sent to Vanderhoof, and on the same terms of "Chg." The first monthly statement to Preston Farm was on the same printed statement form as had been sent to Vanderhoof, including the service charge legend. Transactions between Bio-Zyme and Preston Farm continued through April 1976 with fourteen invoices, nine service charges, numerous credits and a concluding balance of $31,321.56 (inclusive of Vanderhoof's old balance of $14,910.16 which had been posted to the Preston Farm monthly statements). Trial was to the court and judgment was rendered that (1) Bio-Zyme recover from Vanderhoof the unpaid invoices he had ordered, less double the service charges to Vanderhoof because such charges were usurious, and allowed each an attorney's fee from the other and (2) Bio-Zyme recover judgment against Preston Farm for the unpaid invoices Preston Farm had ordered, plus service charges, and an attorney's fee. The judgment provided for interest at 9 percent per annum from date of entry.

On appeal Vanderhoof and Preston Farm both urge that since there was *no* agreement for a service charge, *any* amount charged was more than double the lawful rate; consequently, Bio-Zyme should be penalized by forfeiting all debt and interest. By cross points, Bio-Zyme urges that Vanderhoof was shown by the evidence to be the alter ego of Preston Farm entitling Bio-Zyme to joint and several judgment against both for its claims.

◼ We first examine the argument of both Vanderhoof and Preston Farm that they made no agreement for a service charge. The record does not reflect any agreement directly made by either Vanderhoof or Preston Farm; however, each shipment was accompanied by an invoice whose terms were "Chg.," indicating credit was extended on some kind of terms. Vanderhoof and Preston Farm insist there was no specific agreement ever made by them on what these terms "Chg." included. Never-

theless, the first and each successive monthly statement received by Vanderhoof and subsequently Preston Farm had printed upon it the additional terms, quoted above, providing for a service charge. The record does not reflect that either Vanderhoof or Preston Farm protested these printed terms when first received, or protested the terms appearing on subsequent monthly statements, or protested the posting of a service charge to the face of their accounts. Preston Farm did not protest when its several payments and credits were posted, in part, to the discharge of accrued service charges. Section 2.207 of the Texas Business & Commerce Code (Vernon 1968) provides:

(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(b) The additional terms are to be construed as proposals for addition to the contract. *Between merchants such terms become part of the contract unless* :

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) *notification of objection to them has already been given or is given within a reasonable time after notice of them is received.*

(c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title. [Emphasis added]

Here, the parties agree that the invoice terms were "Chg." or credit, but no particular terms were stated. When Bio-Zyme sent its monthly statement, additional terms for this "Chg." or credit, were stated by the printed service charge. Consistent with section 2.207, our record reflects that all parties here were merchants; no earlier offer by any party expressly prohibited additional terms; the service charge did not materially alter any agreed terms; and there was no objection to the additional terms within a reasonable time, since no objection was ever offered. We find that when Vanderhoof and Preston Farm, respectively, sought credit on their first purchases without limiting or defining the terms of such credit, and the first monthly statement to each reflected the service charge as the terms for such credit, and there was no objection offered to the service charge, Vanderhoof and Preston Farm agreed to the service charge.

As to Vanderhoof, the service charge of one percent per month is equivalent to an annual interest charge of twelve percent. The maximum lawful interest charge to which Vanderhoof could agree, or Bio-Zyme impose, is ten percent per annum. *See* Tex.Rev.Civ.Stat.Ann. art 5069–1.02 (Vernon 1971). Consequently, Bio-Zyme must suffer the penalty for usury imposed by our statutes. The penalty is found in a succeeding section, art. 5069–1.06(1) and (2), which provide:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court

. . . .

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; . . . .

Since the twelve percent per annum rate agreed upon by Vanderhoof and Bio-Zyme is less than double the lawful rate, the penalty is the forfeiture of twice the inter-

est charged, and reasonable attorney's fees. The judgment of the trial court awarded precisely this relief to Vanderhoof and we overrule Vanderhoof's complaint that the trial court did not forfeit all of his principal debt as well as interest.

■ As to Preston Farm, the proposed service charge of one percent per month was accepted by it for want of objection, and was the equivalent of twelve percent per annum interest on the account. Preston Farm is a corporation and corporations may agree to an interest rate not exceeding eighteen percent per annum, upon certain conditions. Article 1302–2.09 of the Texas Miscellaneous Corporation Laws Act (Vernon 1980) states:

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited; however, nothing contained herein shall prevent any charitable or religious corporation from asserting the claim or interposing the defense of usury in any action or proceeding.

The initial order of Preston Farm from Bio-Zyme in November 1975 totaled $5,549.20. An additional order in the same month totaled $3,496.30. At the end of November 1975, Preston Farm received the first monthly statement, reciting (in print) the service charge. Preston Farm did not object to these "additional terms" defining the terms expressed on the invoice only as "Chg.". Preston Farm subsequently paid on its November 1975 account, which payment, in part, was credited to the service charge. Preston Farm made no objection to this manner of application of its payment. We conclude that Preston Farm agreed to the service charge at twelve percent per annum, on an advance greater than $5,000 so as to make applicable article 1302–2.09 which fixes the maximum rate at eighteen percent per annum. Consequently, the trial court correctly found Preston Farm was charged less than the lawful rate and correctly denied Preston Farm any usury penalty against Bio-Zyme.

■ Bio-Zyme by its counterpoint argues that it should have judgment against Vanderhoof and Preston Farm, jointly and severally, because the record showed that Preston Farm was the "alter ego" of Vanderhoof. Bio-Zyme did not assert its "alter ego" theory by its pleadings but urges that the issue was tried by consent. *See* Tex.R. Civ.P. 67. Assuming that the issue of alter ego was properly before the court, Bio-Zyme points out that its "alter ego" theory was proved by Vanderhoof's own testimony because the record reflects that:

(1) The corporate directors of PRESTON were actually partners.

(2) Only some of the directors were elected by the corporate incorporators.

(3) There were no corporate shareholders.

(4) There were no corporate shares issued.

(5) The corporation, after a period of "being dormant" was "reactivated" with "a new slate of directors."

(6) The new slate of directors in a sense "elected themselves."

(7) Vanderhoof claims that the corporation paid his personal debts.

(8) Vanderhoof informally paid corporate debts and expenses from his personal funds.

(9) There was no accounting between the corporation and VANDERHOOF as to any debt of allocation of funds between them.

(10) No one but VANDERHOOF contributed funds to the corporation.

(11) There were never any corporate shareholder meetings.

We cannot agree. Our courts have held that the application of the "alter ego" theory, so as to make an individual liable for corporate obligations, requires that the record reflect that the individual is using the corporate entity as a sham to perpetrate a fraud. *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex.1968); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962); *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955); *Hanson Southwest Corporation v. Dal-Mac Construction Co.*, 554 S.W.2d 712 (Tex.Civ.App. —Dallas 1977, writ ref'd n. r. e.). Additionally, there must be a showing of bad faith or fraud. *Angus v. Air Coils, Inc.*, 567 S.W.2d 931 (Tex.Civ.App.—Dallas 1978, no writ); *Holmes v. Clow*, 533 S.W.2d 99 (Tex. Civ.App.—Tyler 1976, no writ). Here, Bio-Zyme points out several instances where Vanderhoof and Preston Farm have failed to observe the corporate formalities and have failed to keep separate their respective affairs, but Bio-Zyme fails to point out how these failures have made Bio-Zyme fall "victim to some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result" as found in *Tigrett v. Pointer*, 580 S.W.2d 375 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). Since Bio-Zyme fails to point out in the record what inequitable result would befall it if the alter ego theory were not applied, we are "justifiably reluctant to impose corporate liabilities on individuals." *Angus v. Air Coils, Inc., supra.* We hold that the trial court did not err in failing to impose the liability of Preston Farm on Vanderhoof.

Affirmed.