Randall Wade LUCAS, Petitioner,

v.

TEXAS INDUSTRIES, INC. and
Everman Corporation,
Respondents.

No. C–1328.

Supreme Court of Texas.

July 11, 1984.

Rehearing Denied July 3, 1985.

Rehearing Denied Oct. 9, 1985.

Werner & Rusk, John C. Werner and Michael H. Norman, Houston, for petitioner.

Vinson & Elkins, Craig Smyser, Hicks, Hirsch, Glover & Robinson, Michael Windham and Brian M. Chandler, Houston, for respondents.

CAMPBELL, Justice.

This is a negligence and products liability case. Randall Wade Lucas sued Texas Industries, Inc. (TXI) and Everman Corporation (Everman) for injuries sustained when a ten ton concrete beam came loose from its rigging and fell on his leg. The trial court rendered judgment against the defendants jointly and severally for $2,000,-000. The court of appeals reversed the judgment against Everman and rendered judgment that Lucas take nothing against Everman. 634 S.W.2d 748. The court of appeals ordered a remittitur of $344,316.60 of the judgment against TXI and, after Lucas filed the remittitur, affirmed the judgment as modified. *Id.* We reverse the judgment against TXI and render judgment that Lucas take nothing from TXI.

We reverse the judgment of the court of appeals as to Everman, sever and remand the cause to the court of appeals.

This suit arose from an accident which occurred during the construction of a parking garage in Houston. Miner-Dederick Construction Company was engaged, as general contractor, to build the parking garage. Miner-Dederick subcontracted with Everman to fabricate and erect the concrete beams needed to construct the garage.

Everman then contracted out some of the fabrication work. Although it is disputed whether Everman contracted with TXI or TXI's wholly owned subsidiary, Texas Structural Products, Inc. (Structural), there is no dispute that the beam that fell on Lucas was fabricated by Structural. Everman hired Pre-cast Erectors, Inc. (Pre-cast) to erect the beams. Lucas was an employee of Pre-cast.

The engineer's drawings, for the concrete beams to be manufactured by Structural, required that the beams be fabricated with two types of lifting inserts. These inserts were used with bolts and bell rings to lift the beams off a truck and place them in position in the parking garage. The plans required that the beams have one and a quarter inch inserts on the edge of the beam, and one inch inserts on the face of the beam.

Prior to starting the project, Everman and Pre-cast had several discussions about the beams. There is evidence that at the conclusion of these discussions, Everman advised that Pre-cast need only bring one and a quarter inch lifting equipment.

Pre-cast arrived at the jobsite with only one and a quarter inch lifting equipment. On May 20, 1977, 18 to 20 trucks loaded with concrete beams from Structural's plant were at the jobsite. As Pre-cast prepared to lift the first beam off the first truck, an employee noticed that the edge inserts on this beam were only one inch inserts, instead of the one and a quarter inch inserts called for by the engineer's drawings. Pre-cast attempted to lift the beam with the one and a quarter inch lift-ing equipment, but the beam fell from its rigging and injured Lucas.

There are two issues in this case: (1) Whether TXI is liable for the tort of its subsidiary, Structural, and (2) Whether there is some evidence to support the jury's finding that Everman was negligent in failing to advise Pre-cast to bring one inch lifting equipment to the project site.

## Alter Ego

■ It is important to note at the outset that disregard of the "legal fiction of corporate entity" is "an exception to the general rule which forbids disregarding corporate existence." *First National Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100 (1939).

■ The trial court and the court of appeals held Structural is the *alter ego* of TXI. TXI contends those courts applied the wrong standard in holding TXI liable for the tort of its subsidiary. Generally, a court will not disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary except where it appears the corporate entity of the subsidiary is being used as a sham to perpetrate a fraud, to avoid liability, to avoid the effect of a statute, or in other exceptional circumstances. *See Torregrossa v. Szelc*, 603 S.W.2d 803 (Tex.1980); *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955). There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the *alter ego* of the parent and make the parent liable for the subsidiary's tort. *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.); *see also Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex.1968). The corporate entity of the subsidiary must have been used to "bring about results which are condemned by the general statements of public policy which are enunciated by the courts as 'rules' which determine whether the courts will recognize their own child." *Roylex, Inc. v. Langson Brothers*

*Construction Co.,* 585 S.W.2d 768 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). The plaintiff must prove that he has fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result. *Torregrossa v. Szelc,* 603 S.W.2d 803; *Preston Farm & Ranch Supply, Inc. v. Bio-zyme Enterprises,* 615 S.W.2d 258 (Tex.Civ.App.—Dallas), *aff'd,* 625 S.W.2d 295 (Tex.1981).

The type of proof needed to satisfy the plaintiff's burden in an *alter ego* case varies depending on whether the underlying cause of action is for breach of contract or tort. *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571 (Tex.1975); *Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336 (Tex.1968). Courts have generally been less reluctant to disregard the corporate entity in tort cases than in breach of contract cases. 1 W. Fletcher Cyclopedia of the Law of Private Corporations § 43 (Supp.1982).

In a tort case, it is not necessary to find an intent to defraud. Generally, in a tort case the financial strength or weakness of the corporate tortfeasor is an important consideration. *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d at 573. If the corporation responsible for the plaintiff's injury is capable of paying a judgment upon proof of liability, then no reason would exist to attempt to pierce the corporate veil and have shareholders pay for the injury. If, however, the corporation sued is not reasonably capitalized in light of the nature and risk of its business, the need might arise to attempt to pierce the corporate veil and hold the parent corporation liable.

The underlying policy argument may be stated as follows: "An inadequately capitalized corporation in a risky business in effect transfers the risk of loss to innocent members of the general public." 19 R. Hamilton, Business Organizations § 234, at 230 (Texas Practice 1973). The financial strength or weakness of the subsidiary is then an important consideration in determining whether the subsidiary is merely a shell through which the parent is conducting its business without taking any of the risks for liabilities incurred.

Unlike in a tort case, however, the plaintiff in a contract case has had prior dealings with the parent corporation. Absent some deception or fraud, the risk of loss is apportioned by virtue of relative bargaining power. *See Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550, 551–52 (Tex. Civ.App.—Dallas 1961, writ ref'd n.r.e.); *Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W.2d 180, 190–91 (Tex.Civ. App.—San Antonio 1965, writ ref'd n.r.e.).

Lucas attempted to justify piercing Structural's corporate veil by introducing evidence that: (1) TXI and Structural had some of the same officers and directors; (2) TXI and Structural filed a consolidated income tax return; (3) TXI and Structural used the same corporate logo; (4) TXI suggested safety procedures to be used in Structural's manufacturing plants; (5) Structural borrowed money from TXI; (6) the Structural officer who signed the contract with Everman signed on a line labeled "Texas Industries, Inc."; and (7) in response to interrogatories, TXI stated it delivered the beam which injured Lucas to the jobsite. The trial court submitted, and the jury answered, the following special issue:

> Do you find from a preponderance of the evidence that on the occasion in question Texas Industries, Inc. and TXI Structural Products, Inc., activities became so blended that TXI Structural Products, Inc., for all practical purposes became the alter ego of Texas Industries, Inc.?
>
> Answer: "We do" or "We do not"
>
> Answer: We do
>
> "Alter Ego" as used in this issue means the activities of the corporations became so blended that the public would become confused as to which corporation was doing the activity in question as to violate the integrity of the respective corporations.

Based on the jury's answer to this issue, the trial court rendered judgment for Lucas against TXI.

■ TXI contends there is no evidence to support this issue and, even if there is some evidence, the issue misstates the applicable law. We hold the evidence introduced by Lucas is no evidence of *alter ego.*

While this is a tort case, no evidence was introduced by Lucas that would indicate that Structural was undercapitalized or incapable of paying a judgment if found liable. The fact that TXI and Structural may have had some or all of the same directors or officers, that TXI and Structural may have filed consolidated income tax returns, that they shared the same corporate logo, or that the two companies conducted intercorporate business did not induce Lucas to fall victim to a basically unfair device by which Structural's corporate entity was used to achieve an inequitable result. *See Torregrossa v. Szelc,* 603 S.W.2d 803.

Lucas was primarily concerned with finding the corporation responsible for his injuries. While it is true TXI admitted in interrogatories that its driver delivered the concrete beam that injured Lucas, the interrogatories immediately following deny the beam was manufactured by TXI and state the beam was manufactured by Structural. This was notice to Lucas that he had sued the wrong company. It appears that the statute of limitations had run on any claims against Structural at that time. Upon gaining this information, however, Lucas did not amend his pleadings to either include or substitute Structural as a defendant and at least attempt to fit within the rule announced by this Court in *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975). *See also Berkey v. Third Ave. Ry. Co.,* 244 N.Y. 84, 155 N.E. 58 (1926).

■ Furthermore, the special issue relied upon by Lucas did not correctly state the law. The "blending of activities" which the jury found in response to the issue will not support a conclusion that TXI was the *alter ego* of Structural. Lucas has cited us to no cases, and we have found

none, which have submitted the issue in this manner. We are unable to determine why the blending of activities or the public's confusion would have any impact on Lucas' suit.

In fact, the established law indicates that the blending of activities alone cannot suffice to treat two corporations as one.

[C]ourts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, ... protect fraud, or defend crime.

*State v. Swift & Co.,* 187 S.W.2d 127 (Tex. Civ.App.—Austin 1945, writ ref'd).

We hold that the issue upon which the trial court's judgment against TXI was based did not properly state the law, and did not serve as a proper predicate to disregard Structural's corporate existence. Therefore, the judgment against TXI must be reversed.

### Everman's Negligence

The next question is whether there is any evidence to support the jury's finding that Everman was negligent in advising Pre-cast to bring only one and a quarter inch lifting equipment to the project. The basis of Lucas' contention is that Everman knew the concrete beams would be delivered with one and a quarter inch inserts on the edge of the beams and one inch inserts on the face of the beams. Lucas claims Everman should have advised Pre-cast to bring lifting equipment sufficient to lift the beams using either the one inch or one and a quarter inch inserts. The jury found Everman was negligent in advising Pre-cast to bring only one and a quarter inch lifting equipment.

■ The elements of actionable negligence are: the existence of a duty on the part of one party to another; a breach of that duty; and damages to the party to whom the duty was owed proximately caused by the breach of the duty. *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.

1975); *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Lucas argues that the duty Everman owed to Pre-cast was to correctly advise Pre-cast of what size inserts the beams would contain. Everman has admitted that it owed this duty.

There is ample evidence that Everman advised Pre-cast that only one and a quarter inch lifting equipment would be needed for the job. Lucas' basis for maintaining that this advice was erroneous is that Everman knew there would also be one inch inserts on the face of the beams by which the beams should be lifted with one inch lifting equipment.

 Since we are reviewing this negligence question as a "no evidence" point, we must consider only the evidence and the reasonable inferences that can be drawn therefrom, in its most favorable light, to support the jury's findings. *Dolenz v. Continental National Bank of Fort Worth*, 620 S.W.2d 572 (Tex.1981). We must examine only the evidence that tends to prove that Everman's advice was negligence and the proximate cause of Lucas' injuries, and if there is any evidence to support the jury's verdict, the verdict stands in the face of a charge of no evidence. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359 (1957).

 Lucas points to the testimony of Earl Haley, the president of Everman Corporation, for proof of the alleged negligent advice. Mr. Haley conceded that the plans and specifications called for one inch face inserts. Despite this knowledge, Everman's representative advised that only one and a quarter inch lifting equipment would be needed. He admitted that when the beams are lying flat on the truck bed, they are "supposed to" be lifted from the one inch face inserts and that he "expected" the beams to be lifted by the face inserts. From this testimony, the jury was entitled to conclude that advising that only one and a quarter inch lifting equipment was necessary at the job site was a breach of the duty owed to correctly inform Pre-Cast of what equipment would be needed to perform the lifting tasks.

Accordingly, Lucas has met the test of *Rosas v. Buddies Food Store*. Therefore, the court of appeals erred in reversing the judgment against Everman and rendering judgment that Lucas take nothing against Everman.

Because of our disposition of the issues of *alter ego* and Everman's negligence, we do not reach the other points of error raised by the parties and we express no opinion on the correctness of the remainder of the court of appeals' opinion. The judgment of the court of appeals against TXI is reversed and judgment is rendered that Lucas take nothing against TXI. The judgment of the court of appeals for Everman is reversed and the cause is severed. That portion of the cause relating to Everman is remanded to the court of appeals for determination of factual sufficiency.

## ON MOTION FOR REHEARING

On rehearing, Lucas argues that our remand of the cause for review of the factual sufficiency of the evidence is unnecessary because Everman is liable as a matter of law based on the theory of strict liability. Although the court of appeals found that Lucas had "(n)o action under principles of strict liability," we failed to address the issue in our original opinion.

 In order to recover under a theory of *strict* liability a plaintiff must establish "(1) the defective and unreasonably dangerous condition of the defendant's product and (2) a causal connection between such condition and the plaintiff's injuries or damages." *Armstrong Rubber Company v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978). A product may be proven to be defective if it is unreasonably dangerous in construction, or it is unreasonably dangerous as designed, or it is unreasonably dangerous because adequate warnings or instructions are not provided. *Miller v. Bock Laundry Machine Company*, 568 S.W.2d 648, 650 (Tex.1977); *Carter v. Mas-*

*sey-Ferguson, Inc.,* 716 F.2d 344, 346 n. 1 (5th Cir.1983).

 Lucas' theory is that a manufacturing defect caused the beam to be unreasonably dangerous in construction. The beam in question was manufactured with one-inch inserts rather than the one and one-quarter inch inserts specified in the plans. Lucas contends that this one-quarter inch deviation rendered the beam defective and unreasonably dangerous within the meaning of § 402A, *Restatement (Second) of Torts* (1965).

The court of appeals found the beam was not defective and overruled Lucas' "strict liability" cross-point. The court of appeals properly disposed of this cross-point. There is no evidence that the beam's failure to conform to original specifications caused it to be unreasonably dangerous in construction. There is no evidence that the beam was structurally unsound, or that it could not be lifted safely as manufactured.

Lucas' motion for rehearing is overruled.

HILL, C.J., and GONZALEZ, J., not sitting.