COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



CEMENTOS DE CHIHUAHUA, S.A. DE
C.V.,

                            Appellant,

v.

INTERMODAL SALES CORPORATION,

                            Appellee.

§

§

§

§

§

No. 08-03-00064-CV

Appeal from the

120th Judicial District Court

of El Paso County, Texas

(TC# 97-1062)




O P I N I O N

            This is an appeal from the decision of the trial court after a bench trial entering a final
judgment finding that Appellee,


 is entitled to judgment on a sworn account. For the reasons stated,
we reverse and render.
I. FACTUAL AND PROCEDURAL BACKGROUND 
            Appellee is a licensed freight broker which provides both interstate and intrastate freight
services. Eurotec is a Mexican corporation which was in the business of manufacturing, among
other things, gardening products which were being produced for a customer in New Jersey. Eurotec
procured the services of Transportation and Maquila Services (“TMS”) to arrange for shipment of
the goods to New Jersey. TMS arranged for the shipping of Eurotec’s products and provided
warehousing and import services for Eurotec.
            Appellee provided shipping services for Eurotec’s products as arranged by TMS. Appellee
had no contact with Eurotec; Appellee’s witness testified that it would be unethical for it to
communicate with Eurotec because of Eurotec’s contracts with TMS. Appellee negotiated the
shipping rates with TMS, invoiced TMS and did not copy Eurotec at any time for the costs. 
Appellee accepted payment from TMS and, in fact, many of the invoices were paid by TMS. When
Appellee began having trouble with the payments from TMS, it contacted Eurotec to discuss the
situation Eurotec was not aware that any invoices had not been paid by TMS.
            Appellee originally sued both Eurotec and TMS on a sworn account contending that the
shipping costs for Eurotec products had not been paid by TMS. At some point, Appellee became
aware that TMS was insolvent and out of business. Appellee amended its petition and dropped TMS
as a defendant and joined Cementos and CA as defendants. Appellee contended that Eurotec was
organized as a tool or business conduit of the co-defendants, Cementos and CA and that Eurotec was
abandoned as a means of avoiding the debt owed to Appellee. Eurotec and Cementos are both
Mexican Corporations owned by a Control Administrativo Mexicano, S.A. de C.V.


 Though larger
and more profitable, Cementos is a sister corporation of Eurotec. The evidence presented at trial,
indicated that at some point, certain employees from Cementos were sent to Eurotec to evaluate
Eurotec’s condition and assist in making Eurotec profitable to make it attractive to a buyer. 
Eventually, all Eurotec’s known debts were paid and its assets were sold, though Eurotec still
continues to exist as a corporate entity.
            Eurotec did not receive any invoices from Intermodal and paid all invoices received from
TMS.
            A bench trial was held and Appellee called several witnesses in support of its position. 
Margaret Julianna Rocha was called as the agent and representative of Intermodal Sales. What is
most significant about Ms. Rocha’s testimony is what was not included. Ms. Rocha testified that
she was contacted by Frankie Contreras from TMS and was asked to provide shipping rates for a
third party shipper. Initially, Ms. Rocha did not know who the third party would be. Ms. Rocha
testified that her company, Intermodal, dealt exclusively with TMS but, based upon representations
made by TMS, believed that Cementos was an owner of Eurotec. Ms. Rocha confirmed that the only
contact Appellee had regarding these invoices was with TMS and the fact that Cementos was a
corporation related to Eurotec was only communicated to Intermodal by employees of TMS,
orallyAppellee did not receive any written documentation regarding the corporate relationship
between Eurotec and Cementos and had no knowledge what-so-ever of the type of corporate
relationship, if any, that existed between Eurotec and Cementos. Appellee’s only evidence of
corporate intermingling is limited to a few anecdotal, verbal representations by TMS’s employees
that Cementos was an owner of Eurotec. It is not apparent from the record when these
representations were made, but clearly, they do not rise to the level of more than a scintilla of
evidence that Eurotec ever operated as a mere tool or business conduit of Cementos.
            Appellee’s evidence regarding the operational structure of the corporate defendants is
virtually non-existent. The fact that Appellee’s manager, believed that Cementos was an owner of
Eurotec, does not make it so. Further, there is not a single bit of evidence which suggests that any
employee from any of the defendants ever represented to Appellee that Cementos was other than a 
“sister corporation” to Eurotec. The only evidence presented at trial regarding the relationship of
the defendants was presented by Raul Ambriz an executive of Cementos. He explained the corporate
relationship of the three entities and confirmed that Eurotec still exists, though has no assets.
Appellee never dealt with any employees or officers of Eurotec, Cementos or CA until it began
having trouble collecting on its outstanding invoices. While providing shipping services to TMS,
Appellee never invoiced Eurotec, did not list Eurotec on any of its invoices, did not copy Eurotec
with any invoices, listed TMS as the shipper on its invoices, and addressed all its invoices only to
TMS.
            After a bench trial, the trial court entered judgment in favor of Appellee entering a judgment
against Cementos de Chihuahua only, in the amount of $77,729.40 including prejudgment interest. 
The additional sum of $5,546.75 was awarded for attorney’s fees. Cementos as Appellant, appeals
asserting two issues.
II. Issues on Appeal
            In its first issue on appeal, Appellant complains that the trial court erred in disregarding the
corporate entity of Eurotec and entering judgment against Cementos. Significantly, Appellant’s
prayer only requests that this court review the trial court’s decision and reverse and render. Appellee
correctly asserts that the challenges as presented are only to the legal sufficiency of the evidence. 
Thus, we read this issue as a contention by Appellant that there is no evidence to support the trial
court’s findings as a matter of law. Because of our decision on Appellant’s issue number one we do
not reach issue number two.
III. Standard of Review
            A “no evidence” or legal insufficiency point is a question of law which challenges the legal
sufficiency of the evidence to support a particular fact finding. There are two separate “no evidence”
claims. When the party having the burden of proof suffers an unfavorable finding,


 the point of error
challenging the legal sufficiency of the evidence should be that the fact or issue was established as
“a matter of law.” When the party without the burden of proof suffers an unfavorable finding, the
challenge on appeal is one of “no evidence to support the finding.” In re Estate of Livingston v.
Nacim, 999 S.W.2d 874, 876 (Tex.App.--El Paso 1999, no pet.); see Creative Manufacturing, Inc.
v. Unik, Inc., 726 S.W.2d 207, 210 (Tex.App.--Fort Worth 1987, writ ref’d n.r.e.).
            When attacking the legal sufficiency of the evidence to support an adverse finding on an issue
for which he had the burden of proof, i.e., challenging the trial court’s finding as a matter of law, the
appellant must demonstrate on appeal that the evidence conclusively established all the vital facts
in support of the issue. In re Estate of Livingston, 999 S.W.2d at 879; Sterner v. Marathon Oil
Company, 767 S.W.2d 686, 690 (Tex. 1989); Kratz v. Exxon Corp., 890 S.W.2d 899, 902
(Tex.App.--El Paso 1994, no writ); Chandler v. Chandler, 842 S.W.2d 829, 832 (Tex.App.--El Paso
1992, writ denied). A party attempting to overcome an adverse fact finding as a matter of law must
surmount two hurdles. In re Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690. 
First, the record must be examined for evidence that supports the finding, while ignoring all evidence
to the contrary. In re Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz,
890 S.W.2d at 902. Second, if there is no evidence to support the finding, then, the entire record
must be examined to see if the contrary proposition is established as a matter of law. In re Estate
of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890 S.W.2d at 902. Only if
the contrary position is conclusively established will the point of error be sustained. In re Estate of
Livingston, 999 S.W.2d at 879; Kratz, 890 S.W.2d at 902; Chandler, 842 S.W.2d at 832. We review
appellant’s issue to resolve the question of whether the trial court erred by disregarding the corporate
entity of Eurotec and entering judgment against Cementos, as a matter of law.
IV. Discussion of Evidence
            After a trial to the court, the court entered a judgment against Cementos in favor Appellee.
It also filed findings of fact and conclusions of law. A review of the findings reveals that the trial
court made no findings which will support the judgment as entered. We also note that neither party
filed proposed findings of fact or conclusions of law nor objected to the findings as issued. On
appeal, Appellant does not challenge the findings of fact or conclusions of law individually but rather
attacks the judgment as a whole as entered. Appellant contends that the court committed error by
disregarding the corporate existence of Eurotec and entering judgment against its sister corporation
Cementos as a matter of law. We review the findings on a legal sufficiency basis.
            Ultimately we look to the record on appeal for review of this issue. We cannot agree that
more than a scintilla of evidence exists to support the trial court’s entry of a judgment against
Cementos. In fact, a review of the record does not establish a legal basis to hold either defendant,
Eurotec or Cementos, liable for the debts of TMS. The facts establish a complete lack of privity
between the parties and no contact between Eurotec and Appellee until such time as TMS defaulted
on its obligations. The only evidence presented in the record is that Eurotec paid all its debts and
obligations as owed and that TMS did not. The fact that TMS defaulted on its obligations, does not,
as a matter of law, create an obligation on the part of Eurotec. Any legal obligations between
Eurotec and TMS are separate and distinct from legal obligations owed by TMS to Appellee.
            It is important to note at the outset that disregard of the “legal fiction of corporate entity” is
“an exception to the general rule which forbids disregarding corporate existence.” Lucas v. Texas
Industries, Inc., 696 S.W.2d 372, 374 (Tex. 1984); First National Bank in Canyon v. Gamble, 134
Tex. 112, 132 S.W.2d 100 (1939).
            Generally, a court will not disregard the corporate fiction and hold a corporation liable for
the obligations of its subsidiary except where it appears the corporate entity of the subsidiary is being
used as a sham to perpetrate a fraud, to avoid liability, to avoid the effect of a statute, or in other
exceptional circumstances. Lucas, 696 S.W.2d at 374-75. See also, Torregrossa v. Szelc, 603
S.W.2d 803 (Tex. 1980); Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340 (1955). There must
be something more than mere unity of financial interest, ownership and control for a court to treat
the subsidiary as the alter ego of the parent and make the parent liable for the subsidiary’s tort. 
Lucas 696 S.W.2d at 374-75; Hanson Southwest Corp. v. Dal-Mac Construction Co., 554 S.W.2d
712 (Tex.Civ.App.--Dallas 1977, writ ref’d n.r.e.); see also Bell Oil & Gas Co. v. Allied Chemical
Corp., 431 S.W.2d 336 (Tex. 1968). The corporate entity of the subsidiary must have been used to
“bring about results which are condemned by the general statements of public policy which are
enunciated by the courts as ‘rules’ which determine whether the courts will recognize their own
child.” Lucas, 696 S.W.2d at 374-375; Roylex, Inc. v. Langson Brothers Construction Co., 585
S.W.2d 768 (Tex.Civ.App.--Houston [1st Dist.] 1979, writ ref’d n.r.e.); Sutton v. Reagan & Gee, 405
S.W.2d 828 (Tex.Civ.App.--San Antonio 1966, writ ref’d n.r.e.). The plaintiff must prove that he
has fallen victim to a basically unfair device by which a corporate entity has been used to achieve
an inequitable result. Lucas, 696 S.W.2d at 374-75; Torregrossa, 603 S.W.2d at 803; Preston Farm
& Ranch Supply, Inc. v. Bio-Zyme Enterprises, 615 S.W.2d 258 (Tex.Civ.App.--Dallas), aff’d, 625
S.W.2d 295 (Tex. 1981).
            The type of proof needed to satisfy the plaintiff’s burden in an alter ego case varies depending
on whether the underlying cause of action is for breach of contract or tort. Lucas, 696 S.W.2d at
374-75; Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571 (Tex. 1975); Bell Oil & Gas Co.
v. Allied Chemical Corp., 431 S.W.2d 336 (Tex. 1968).
            In its brief, Appellee asserts that the evidence presented at trial established as a matter of law
that the corporation, Cementos was the “alter ego” of Eurotec and therefore, the trial court was
justified in disregarding the corporate fiction to hold Cementos liable. We note that Appellees did
not plead that Cementos functioned at any time as the “alter ego” of Eurotec and only plead
allegations grounded in fraud, the use of Eurotec as a mere tool or business conduit and the
abandonment of Eurotec as a means of avoiding legal obligations. We still consider the record as
a whole, however, to determine whether there is any evidence to support the trial court’s judgment
as entered under any theory.
            We agree with Appellee that the case of Castleberry v. Branscum, 721 S.W.2d 270, 272
(Tex. 1986) provides guidance when evaluating a corporate existence to determine whether the
corporate formalties should be set aside. We also note that Castleberry deals with the question of
whether to pierce the corporate veil and hold individual officers and directors liable for the debts of
the corporation. Castleberry provides that the corporate fiction should be disregarded when:
(1) when the fiction is used as a means of perpetrating fraud;
 
(2) where a corporation is organized and operated as a mere tool or business conduit
of another corporation; 
 
(3) where the corporate fiction is resorted to as a means of evading an existing legal
obligation; 
 
(4) where the corporate fiction is employed to achieve or perpetrate monopoly; 
 
(5) where the corporate fiction is used to circumvent a statute; and 
 
(6) where the corporate fiction is relied upon as a protection of crime or to justify
wrong.




Castleberry, 721 S.W.2d at 272.
            We do not agree with Appellee, however, that the evidence presented at trial supports a
finding that Cementos was an “alter ego” of Eurotec and, therefore, should be liable for the judgment
in this case.


 There is no evidence presented in the record and certainly not more than a scintilla that
Cementos functioned as the “alter ego” of Eurotec nor does any evidence exist to support a finding
on the other Castleberry factors. Specifically there is no evidence to support a finding that Eurotec
was organized as a mere tool or business conduit of Cementos, no evidence to establish that the
corporate fiction was maintained as a means of evading an existing legal obligation, and no evidence
to establish that the corporate fiction was maintained as a means to justify a wrong or perpetuate a
fraud.
            Turning to the trial court’s judgment, we observe that the trial court entered judgment only
against Cementos and did not address the potential liability of Eurotec. Consequently, only
Cementos appears as Appellant. We see no basis for the trial court’s decision to ignore the corporate
formalities creating Cementos as an independent corporate entity to assist Appellees who are
suffering as a result of the failure of a business. In fact, the findings themselves do not support a
judgment against Cementos on any of the Castleberry factors. We sustain Appellant’s issue number
one.
            Because we have sustained issue number one and render judgment in favor of Appellant, we
do not reach issue number two. 
            Having sustained Appellant’s issue number one, we reverse the judgment of the trial court
and render judgment in favor of Appellant.


January 27, 2005                                                  
                                                                                     RICHARD BARAJAS, Chief Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
(Larsen, J., not participating)